IN RE JULIO MEJÍAS SANTANA, Respondent.

No. 108.      Decided November 10, 1965.

*J. B. Fernández Badillo, Solicitor General, Jorge Segarra, Américo Serra,* and *Jenaro Marchand, Assistant Solicitors General,* for The People. *Julio Mejías Santana, pro se.*

PER CURIAM: The Solicitor General filed a complaint against Julio Mejías Santana, an attorney. He alleges that in documents filed in this Court the respondent "brings false charges and uses improper and offensive language against colleagues and judges" and that "he was guilty of misconduct in bringing false charges against colleagues when he testified under oath during the trial in case number C-59-7697, of *Hernández* v. *Universal C.I.T. Credit Corp.*"

We appointed Miguel Velázquez Rivera to hear the evidence that would support the counts charged. Hearings were held for that purpose. Respondent did not deny the charges. On the contrary he reiterates his statements. This would

generally cause us to sustain the complaint and suspend him from the practice of law.

But it is evident from an examination of the whole record of this case as well as of those related therewith, and from respondent's attitude toward the charges preferred against him, that he suffers from a critical emotional disturbance, the result of a paranoid personality.[1] The statements made by respondent which gave rise to the filing of

---

[1] The opinion of the group of medical experts who examined him reads as follows:

"The undersigned psychiatrists-physicians, appointed by this Court on September 13, 1961 to examine Julio Mejías Santana, to the best of our knowledge, have reached the following conclusions after carrying out the pertinent examinations and studies:

"1. That Julio Mejías Santana presents a PARANOID PERSONALITY.

"2. That this type of defect in the psychological development is characterized by showing these persons an extreme sensibility in interpersonal relations and always having a tendency to complain; reacting to significant situations with suspicion, envy, distrust, malice, and/or unfounded jealousy. These persons accuse others frequently of desires and complexes which they have expressed when unable to accept them as their own.

"3. That this group of persons, in general, shows no mental or emotional symptoms. It is considered that the above-described characteristics of their personality are so deeply rooted that despite the fact that in certain situations they can exaggerate them notably, they continue functioning without developing a psychosis.

"4. That from the history, from the direct examination and from the other sources of information accessible to the undersigned no psychotic reaction has been deduced by these experts in the patient.

"5. That in view of the foregoing, the undersigned believe that Julio Mejías Santana is mentally fit to defend himself and to consult his lawyers.

"6. That as to the practice of law the experts cannot, conscientiously, render a definite judgment whether Julio Mejías Santana is able or not to practice it inasmuch as the legal profession, as almost any profession, is practiced in different standards, ways and/or specialties. The personality defect shown by the patient does not prevent him from practicing adequately one of such modalities within the limitations imposed upon him by that defect.

"7. That the undersigned wish to state also that an evaluation of the cephalorachidian fluid was not made because the patient refused to submit to the test.

"And, in testimony whereof, we hereby issue this certificate in Hato Rey, Puerto Rico, on March 4, 1963."

the complaint are the result of his emotional condition. This being so we will not consider disbarring respondent. It would be unfair to impose upon him this stigma. *In Re Bourgeois*, 182 N.E.2d 651 (Ill. 1962).

However, the fact that we shall not disbar him does not end our responsibility. We must always see that attorneys keep a dignified conduct in the practice of the profession. And this applies to the acts as well as to the statements they may make in the course of any litigation. If respondent's emotional condition was the cause of his statements, they may recur in any moment. It is our duty to prevent it.

In the psychiatric report it is stated that "as to the practice of law the experts cannot, conscientiously, render a definite judgment whether Julio Mejías Santana is able or not to practice it inasmuch as the legal profession, as almost any profession, is practiced in different standards, ways and/or specialties. The personality defect shown by the patient does not prevent him from practicing adequately one of such modalities within the limitations imposed upon him by that defect."

Explaining this statement Doctor Fernández Marina, one of the experts who examined him, said, during the hearing held before the court, that: "if the person has to argue litigious questions in the presence of someone who must render judgment, if he tends to interpret others' actions as against himself, well, it may affect him; now, if this person is engaged in, and I am referring specifically to Mejías, consultation, in questions where interpersonal relations are not involved, he may perfectly continue using his legal knowledge and interpreting it wisely, but when he confronts an interpersonal situation where a judgment must be rendered, then aggressiveness is manifested there."

The expert's position is to the effect that due to his emotional disturbance respondent is adversely affected when he must practice the profession when interpersonal relations

are involved, when he must appear in court. On the contrary he maintains that if respondent is engaged in his office work, he may practice his profession without prejudice to justice, without prejudice to society, without prejudice to himself.

In view of the foregoing circumstances, we adopt, as the most proper solution in this case—because we consider it in harmony with the most effective use of our power to supervise the legal profession and the most advisable to the social interest, on the one hand, and to the respondent himself on the other—the decision to limit his practice of law to consultations in his office and notarial work, until he shows to the Court, after filing a petition to that effect, that his condition has improved to the point that his reinstatement to the full practice of law is justified.

Mr. Justice Blanco Lugo did not participate.