[No. 34059. *En Banc.* April 18, 1957.]

THE STATE OF WASHINGTON, *on the Relation of Heidi Kirschner, Plaintiff,* v. DELLA URQUHART, *as Director of the Department of Licenses, Respondent.*[1]

*Smith & Dowdle* and *Smith Troy*, for relator.

*The Attorney General* and *Clyde A. Barnard, Assistant,* for respondent.

FOSTER, J.—Relator invokes the original jurisdiction of this court in mandamus to compel respondent director of licenses to issue her a license to practice medicine. With commendable candor, the attorney general concedes the truth of relator's factual allegations. She alleges American citizenship and that she received the degree of doctor of medicine from the University of Vienna in 1937, and has

[1] Reported in 310 P. (2d) 261.

served the required statutory internship and met all other statutory requirements for the license, except the respondent denies accreditation by the Association of American Medical Colleges, and the council of medical education and hospitals of the American Medical Association, of the medical school in question at the time of relator's graduation.

Until 1956, the respondent refused to allow relator to take the basic science examination because of lack of accreditation in the year in question; but in 1956, relator was conditionally permitted to take both the basic science examination and the medical examination, without prejudice, however, to the respondent's right to a judicial determination of the accreditation of the Vienna medical school in the year in question. It is admitted that relator passed both examinations.

Relator alleges that both she and her husband graduated from the University of Vienna medical school in 1937. Her husband was licensed to practice in Washington in 1941, but she did not then apply for license because of the tender age of their children, requiring her personal care, and the then limited availability of internships for women in Seattle hospitals.

It is admitted that, at the time of relator's graduation in 1937, the Association of American Medical Colleges and the council of medical education and hospitals of the American Medical Association had no accredited or approved list of foreign medical schools and such list did not come into being until three years after the enactment of the statute in question, or 1950.

In 1941, the existing statute, presently noticed, required graduation from a regular medical school, which, at the diploma date, maintained standards not less than those prescribed by the Association of American Medical Colleges.

The controversy presents the constitutionality of the Laws of 1947, chapter 168, p. 781, set out in the margin.[2]

---

[2]"Section 6. Only one form of certificate shall be issued by the said Board. Such certificate shall be under the seal of the Board and signed by the president and secretary, and shall authorize the holder thereof to practice medicine and surgery within this state. Upon compliance with

That act amended Laws of 1909, chapter 192, § 6, p. 679, as amended by Laws of 1919, chapter 134, § 3, p. 373, set out in the margin.[3] The original compilers[4] of the Revised Code of

the requirements of this act by an applicant for a license to practice medicine and surgery in this state, the Board shall issue such certificate, authorizing the holder thereof to use drugs or what are known as medicinal preparations in or upon human beings and to sever or penetrate the tissues of human beings and to use any and all other methods in the treatment of diseases, injuries, deformities, or other physical or mental conditions.

"In order to procure a certificate to practice medicine and surgery, the applicant for such certificate must file with said Board at least thirty days prior to a regular meeting thereof, satisfactory testimonials of his moral character, and a diploma issued by a medical school which has been accredited and approved by the Association of American Medical Colleges ,and the Council of Medical Education and Hospitals of the American Medical Association, at the time a diploma shall have been issued therefrom, or satisfactory evidence of having possessed a diploma from a medical school accredited and approved as herein provided, and he must file with such diploma an application sworn to before some person authorized to administer oaths, and attested by the hand and seal of such officer, if he have a seal, stating that he is the person named in said diploma, that he is the lawful holder thereof, and that the same was procured in the regular course of instruction and examination, without fraud or misrepresentation. From and after July 1, 1919, said applicant must furnish evidence that he has served for not less than one year as interne in a thoroughly equipped hospital which shall have had at least twenty-five beds for each interne devoted to the treatment of medical, surgical, gynecological and special diseases, and he also must have had a service of six weeks, or the equivalent thereof in the maternity department of the same or some other hospital, during which time he shall have attended or participated in the attendance upon not less than six confinements. He shall furnish evidence that he has had some experience in, and a practical working knowledge of pathology, and the administration of anaesthetics: *Provided,* That when an applicant who has graduated before July 1, 1919, has not completed one year as interne as above provided, he must furnish evidence that he has been engaged in the active practice of medicine and surgery for a period of at least two years prior to that date. The said application shall be made upon a blank furnished by said Board, and it shall contain such information concerning said medical instruction and the preliminary education of the applicant as said Board may by rule provide. Applicants who have failed to meet the requirements must be rejected."

[3]"Section 8391. Only one form of certificate shall be issued by the said board. Such certificate shall be under the seal of the board and and signed by the president and secretary, and shall authorize the holder thereof to practice medicine and surgery within this state. Upon com

Washington codified a fragment of the 1947 amendment in RCW 18.71.050, which, so far as material, is set out in the

pliance with the requirements of this act by an applicant for a license to practice medicine and surgery in this state, the board shall issue such certificate, authorizing the holder thereof to use drugs or what are known as medicinal preparations in or upon human beings and to sever or penetrate the tissues of human beings and to use any and all other methods in the treatment of diseases, injuries, defomaties, or other physical or mental conditions.

"In order to procure a certificate to practice medicine and surgery, the applicant for such certificate must file with said board at least thirty days prior to a regular meeting thereof, satisfactory testimonials of his moral character, and a diploma issued by some legally chartered medical school, the requirements of which shall have been at the time of granting such diploma in no particular less than those prescribed by the Association of American Medical Colleges for that year, or satisfactory evidence of having possessed such diploma, and he must file with such diploma an application sworn to before some person authorized to administer oaths, and attested by the hand and seal of such officer, if he have a seal, stating that he is the person named in said diploma, that he is the lawful holder thereof, and that the same was procured in the regular course of instruction and examination, without fraud or misrepresentation. From and after July 1, 1919, said applicant must furnish evidence that he has served for not less than one year as interne in a thoroughly equipped hospital which shall have had at least twenty-five beds for each interne devoted to the treatment of medical, surgical, gynecological and special diseases, and he also must have had a service of six weeks, or the equivalent thereof in the maternity department of the same or some other hospital, during which time he shall have attended or participated in the attendance upon not less than six confinements. He shall furnish evidence that he has had some experience in, and a practical working knowledge of pathology, and the administration of anaesthetics: *Provided,* That when an applicant who has graduated before July 1, 1919, has not completed one year as interne as above provided, he must furnish evidence that he has been engaged in the active practice of medicine and surgery for a period of at least two years prior to that date. The said application shall be made upon a blank furnished by said board, and it shall contain such information concerning said medical instruction and the preliminary education of the applicant as said board may by rule provide. Applicants who have failed to meet the requirements must be rejected."

[4]It is due both the code reviser and his staff to say that none of them had anything to do with the original compilation or original printing of the RCW. It is also fair to state that the statute law committee is attempting with dispatch to conform the text of the code to the law as enacted by the legislature.

margin,[5] substituting the compiler's notion of what the legislature should have enacted for the text of the law as enacted by the legislature. The compilers were not and could not be endowed with such power.

The board of medical examiners established in 1909[6] was abolished in 1921, and the duties transferred to the director of licenses.[7] The 1947 amendment vests the powers of licensing medical applicants in the nonexistent board of medical examiners.

It would have been proper for the legislature to have enacted that accredited schools were only those on a list then in being, whether prescribed by the American Medical Association, or some other learned society; but it was not within permissible constitutional limits to define accredited institutions as those on a list not then in existence, irrespective of the standing of the society which might compile such future list.

■ Legislative power is nondelegable. When the legislature declares that schools on an existing list are accredited schools and those not on an existing list are not, it is legislating; but when it declares that accredited schools shall be those on a list thereafter to be promulgated, irrespective of the authority promulgating such list, it is attempting to delegate legislative power, and such an act is unconstitutional.

---

[5]"Every such applicant must file in the office of the director with his application satisfactory testimonials as to his moral character, and a diploma issued by a medical school accredited and approved by the Association of American Medical Colleges and the Council of Medical Education and Hospitals of the American Medical Association, at the time the diploma was issued therefrom, or satisfactory evidence of having possessed a diploma from a medical school accredited and approved as herein provided. The application must be sworn to.before some person authorized to administer oaths, and attested by the hand and seal of such officer, if he has a seal, stating that the applicant is the person named in the diploma, that he is the lawful holder thereof, and that it was procured in the regular course of instruction and examination, without fraud or misrepresentation."

[6]Laws of 1909, chapter 192, p. 677.

[7]Laws of 1921, chapter 7, § 135, p. 68.

■ The vice in the statute is not that it adopts a standard of accreditation fixed by recognized medical societies, but that there was no such list in existence at the time of the enactment in question. The first list of accredited foreign medical colleges was not made by those societies until three years after the enactment of the statute.

The national electrical code, compiled by the National Board of Fire Underwriters and the Underwriters' National Electric Association, is revised every two years. Without identifying which edition was meant, the legislature of Kansas enacted a statute requiring all electrical wiring within that state to conform to the national electrical code; and this, the supreme court of Kansas said, was an unlawful attempt to delegate legislative power. Had the act provided that all electrical wiring conform to the national electrical code of 1915, or to any then existing edition thereof, no question would arise; but the use of future editions was held unconstitutional in *State v. Crawford,* 104 Kan. 141, 177 Pac. 360, 2 A. L. R. 880.[8] That case is brought into sharper focus when compared with the corresponding act in this state,[9] which enacted the then current edition of that code verbatim.

Similarly, the supreme court of Wisconsin in *Wagner v. Milwaukee,* 177 Wis. 410, 188 N. W. 487, held unconstitutional a Milwaukee ordinance providing that in city contracts, labor should be paid not less than the prevailing wage to be determined by the wage paid to members of any recognized organization of skilled laborers, as an unlawful delegation of the legislative power.

*State v. Emery,* 55 Ohio St. 364, 45 N. E. 319, involved an act regulating the strength and purity of drugs as prescribed

[8]"If the legislature desires to adopt a rule of the national electrical code as a law of this state, it should copy that rule and give it a title and an enacting clause and pass it through the senate and the house of representatives by a constitutional majority and give the governor a chance to approve or veto it, and then hand it over to the secretary of state for publication."

See, also, *City of Tucson v. Stewart,* 45 Ariz. 36, 40 P. (2d) 72, 96 A. L. R. 1492.

[9]Laws of 1913, chapter 130, p. 397.

by the United States Pharmacopoeia. At the time of the enactment of the statute in question, the edition then in use was published in 1880. A revised edition appeared in 1894, which made numerous changes. A conviction for the sale of drugs, legal under the standard promulgated by the earlier edition of the United States Pharmacopoeia but illegal under the latest revision thereof, was reversed because the legislature of 1880 could not adopt rules not then in existence.[10]

Statutes adopting existing Federal rules, regulations, or statutes, are valid, but attempts to adopt future Federal rules, regulations, or statutes, are unconstitutional and void. *Brock v. Superior Court*, 9 Cal. (2d) 291, 71 P. (2d) 209, 114 A. L. R. 127; *Florida Industrial Comm. v. State ex rel. Orange State Oil Co.*, 155 Fla. 772, 21 So. (2d) 599; *Florida Industrial Comm. v. Peninsular Life Ins. Co.*, 152 Fla. 55, 10 So. (2d) 793; *State v. Webber*, 125 Me. 319, 133 Atl. 738; *State v. Gauthier*, 121 Me. 522, 118 Atl. 380, 26 A. L. R. 652; *State v. Intoxicating Liquors, Vino Medical Co.*, 121 Me. 438, 117 Atl. 588; *In re Opinion of the Justices*, 239 Mass. 606, 133 N. E. 453; *Dearborn Independent, Inc. v. City of Dearborn*, 331 Mich. 447, 49 N. W. (2d) 370; *Smithberger v. Banning*, 129 Neb. 651, 262 N. W. 492, 100 A. L. R. 686; *Holgate Bros. Co. v. Bashore*, 45 Dauph. Co. 274; *In re Lasswell*, 1 Cal. App. (2d) 183, 36 P. (2d) 678.

Subsequent changes do not invalidate past adopted Federal statutes, regulations, or rules. 27 Va. L. Rev. 700.

It is not lightly to be assumed that the legislature intended to prohibit all who prior to 1950 graduated from foreign medical schools from practicing here. Certainly, no such assumption can be indulged in the absence of unequivocal language, but such is the inevitable consequence of the respondent's interpretation of the 1947 amendment. It is stipulated that there was no accreditation of any foreign

---

[10]"To hold that the sale could thus be made unlawful, would be equivalent to holding that the revisers of the book could create and define the offense, a power which belongs to the legislative body, and cannot be delegated."

medical school in 1947; consequently, under the terms of the 1947 amendment, no graduate of any foreign medical school could ever be licensed.

The amendment of 1919, previously noticed, promulgated a valid standard of accreditation of all medical schools; that is, such schools must, at the time of the issuance of the diploma then in question, have maintained a standard equivalent to those prescribed by the American Medical Association. It is admitted the medical school of the University of Vienna conformed to such standards at the time of the relator's graduation in 1937.

From what has been said, it is plain that the attempted delegation of future accreditation of foreign medical colleges to private agencies is void; consequently, relator's license application to practice medicine is governed by the valid prior statute.

The writ will issue commanding respondent to determine relator's application for a license to practice medicine as provided by Laws of 1909, chapter 192, § 6, as amended by Laws of 1919, chapter 134, § 3.

Relator's other contentions need not be considered.

HILL, C. J., MALLERY, SCHWELLENBACH, DONWORTH, FINLEY, WEAVER, and OTT, JJ., concur.

ROSELLINI, J., concurs in the result.