(No. 36532.— )
*In re* ADAM DONALD BOURGEOIS, Attorney, Respondent.

*Opinion filed May 25, 1962.*

J. R. CHRISTIANSON, of Chicago, *amicus curiae*.

HOWARD T. SAVAGE, of Chicago, for respondent.

Mr. JUSTICE HOUSE delivered the opinion of the court:
This disciplinary proceeding against respondent Adam Donald Bourgeois, an attorney, arose out of the conversion of funds to his own use. The Committee on Grievances of the Chicago Bar Association, as commissioners under Rule 59, filed a report finding that respondent's conduct tends to defeat the administration of justice and to bring the courts and legal profession into disrepute. The committee recommended suspension from the practice of law for a period of 5 years and until the further order of the court. Respondent filed exceptions to the report and recommendations and brings the cause here for review.

The essential facts are not in dispute. Respondent was admitted to the Illinois bar in 1951. He was employed by a law firm, one of the partners of which was president and general counsel of a life insurance company. Respondent served as assistant general counsel, and among his duties was the closing of real-estate mortgage transactions. He deposited a $15,500 check of the insurance company in an escrow account with Chicago Title and Trust Company pending approval of title for a real-estate loan. Because of title defects the loan was never closed. After various fees, expenses and reimbursements were paid, the escrow was closed on April 20, 1959, by issuance of the title company's certified check for $10,290 to the insurance company. Respondent then endorsed the check and deposited it to his personal account in which there was then a balance of

$419.17. No further deposits were made to the account. Shortly thereafter respondent went to California, and by May 5, 1959, he had drawn checks for the entire amount. He returned to Chicago on August 5, 1959. He borrowed $5000 and paid it to the bonding company which had paid the loss. Within a month thereafter he repaid the entire balance and obtained releases from all interested parties.

The wrongful conversion of funds in an attorney's hands for specific purposes involves moral turpitude and subjects him to disciplinary action. (*In re Fumo,* 22 Ill.2d 429; *In re Abbamonto,* 19 Ill.2d 93; *In re Ashbach,* 13 Ill.2d 411; *In re Thomson,* 3 Ill.2d 308.) While conceding that his acts were improper, respondent argues that suspension, particularly for a fixed period of time, is not called for under the circumstances. He asserts that in addition to certain other mitigating factors, his actions were the result of severe mental and emotional strain brought on by domestic and business difficulties. He had family troubles which led to a separation from his wife. His employer betrayed him and their close relationship had been breached. He cites as evidence of his mental stress the fact that for a year prior to the conversion, and thereafter, he had been taking psychiatric treatments for his emotional disturbances.

The consideration to be given mental and nervous disorders, up to and including insanity, in disciplinary proceedings is a relatively new problem. The only Illinois case, *In re Patlak,* 368 Ill. 547, involved a respondent allegedly insane during the period of the improper transaction. Cases from foreign jurisdictions holding that insanity was not a bar to striking an attorney's name from the roll of attorneys were cited with approval. (See: *In re Kennedy's Disbarment,* 178 Pa. 232, 35 Atl. 995, *In re Manahan,* 186 Minn. 98, 242 N.W. 548; *In re Fitzgibbons,* 182 Minn. 373, 234 N.W. 637.) It was there held that disbarment was the appropriate remedy. In the period immediately following the *Patlak* decision several jurisdictions adopted a similar

view. (See: *In re Dubinsky* (App. Div. 1938), 7 N.Y.S.2d 387; *Cane* v. *State Bar of California,* 14 Cal.2d 597, 95 P.2d 934; *Louisiana State Bar Association* v. *Theard,* 222 La. 328, 62 So. 2d 501 and, 225 La. 98, 72 So. 2d 310.) The rationale of the foregoing line of cases is that disbarment is not meted out primarily for punishment but for the protection of the public and prospective clients of a mentally disturbed attorney.

Courts in later cases have used a different approach to the problem. While recognizing their responsibility to protect the public, they have shown a growing awareness of the desirability of allowing a mentally disturbed attorney the opportunity to prove his rehabilitation, and his fitness to again be an active, useful member of his profession. This has been demonstrated by the tendency to suspend a mentally afflicted attorney for a fixed period and until such time thereafter as he demonstrates his rehabilitation and fitness to practice law. The Supreme Court of Oregon, in the case of *In re Creamer,* 201 Ore. 343, 270 P.2d 159, suspended for two years "and for such time thereafter until he shall have demonstrated by competent evidence that he has sufficiently rehabilitated himself physically, mentally and morally to entitle him to reinstatement in the Oregon State Bar." In 1960 the Supreme Court of Washington remanded to establish whether mental irresponsibility in fact existed in the case of *In re Sherman,* 354 P.2d 888, and stated that the respondent would have to establish his present capability to practice law if he were found to have been irresponsible. A similar holding, without suspension for a fixed period, was rendered by the Supreme Court of New Jersey in 1961, which said: "The offenses warrant striking respondent's name from the rolls but since he obviously is ill, the stigma of disbarment should not be visited upon him. Accordingly he is suspended from the practice of law until the court shall otherwise order upon satisfactory proof of his cure." *In the matter of Fleckenstein,* 34 N.J. 20, 166 A.2d 753.

The Florida Supreme Court, dealing with a factual situation very similar to the one here presented in *State of Florida ex rel. Florida Bar* v. *Ruskin,* 126 So. 2d 142, said, at page 144: "A mere suspension for a fixed period of time, with the assurance of automatic reinstatement at the end of the prescribed period, does not impose upon the lawyer the responsibility of taking affirmative action during the period of suspension in order to gain readmittance at the end of the period." The recommendation of disbarment by the Board of Governors was not followed, and the court went on to say: "In lieu thereof, the respondent Stephen L. Ruskin shall be and he is hereby suspended from the practice of law for a period of six months from the filing of this opinion and continuously thereafter until * * * he shall demonstrate to the Board of Governors of the Florida Bar, and to this Court that he is entitled to be reinstated in the practice of law * * *."

We consider the approach of the later cases, which was taken by the commissioners here, to be the most enlightened. When an attorney commits acts which tend to bring the bar into disrepute while mentally disturbed, he should be suspended for such period of time as the circumstances warrant and remain suspended thereafter until the further order of the court. At the expiration of the fixed suspension period the burden of proof will then be upon him to establish that he has been rehabilitated, that the irrationality has been overcome and is not likely to recur, and that he is a fit person to again practice law. In this way we believe that the interests of the public will be protected and at the same time an attorney who acts improperly while suffering a temporary mental aberration will not be unduly penalized.

Doctor Goodman, a specialist in psychiatry, expressed the opinion that respondent was suffering from emotional disorders, and that with continued psychiatric therapy he can be rehabilitated to the point where he could be a useful member of his profession. In our opinion suspension is in

order, the fixed time of such suspension to be controlled by all the circumstances.

*Amicus Curiae,* in his usual fair manner, concedes that there are additional mitigating factors presented by the record. They are: his age (31 years), his previous good record and his subsequent unblemished conduct, the lack of other charges, the making of full restitution with relative promptness, and the fact that a number of character witnesses, including practicing lawyers and other reputable citizens, testified to his good character and reputation. Furthermore, respondent's repentance, and recognition of his problem by seeking psychiatric help, are entitled to be placed on the scales as mitigating factors.

We feel that the fixed time of suspension is less important than that his suspension be continued until he establishes his complete rehabilitation. The very fact that respondent will never be relieved of his suspension and never again be permitted to practice law in this State, unless he satisfactorily establishes his right thereto, should serve as a deterrent to others. At the same time, it gives respondent an opportunity to prove that he has been rehabilitated. In view of all the attending circumstances, we feel that a one-year fixed suspension will suffice. Respondent is accordingly suspended from practice as an attorney at law for one year and thereafter until the further order of this court.

*Respondent suspended.*