[No. C.D. 2538.    En Banc.    November 25, 1966.]

*In the Matter of the Disciplinary Proceeding Against* ROBERT W. MOODY, *an Attorney at Law.*[*]

*T. M. Royce,* for Board of Governors.

*David J. Williams,* for respondent.

OTT, J.—January 8, 1962, Robert W. Moody was charged by the Washington State Bar Association with professional misconduct, in violation of the Canons of Professional

[*]Reported in 420 P.2d 374.

Ethics. June 18, 1962, Mr. Moody voluntarily ceased the practice of law, and was suspended May 31, 1963, for non-payment of bar association dues.

The hearing panel made the following factual determinations as to Mr. Moody's defalcations:

(1) July 6, 1956, Mr. Moody was engaged to represent a defendant involved in an automobile accident. The plaintiff agreed to accept $400 in settlement of his claim, payable at $35 a month, and, if the defendant defaulted in the monthly payments, the entire claim in excess of $1,000 would become due and owing. Mr. Moody deceived his client by informing him that he could settle the claim for $500 (instead of the agreed $400), payable at $35 a month. Mr. Moody's client accepted the settlement on the basis of $500 and sent monthly payments of $35 to Mr. Moody to be remitted to the plaintiff, in accordance with the agreement. Mr. Moody failed to remit. Pursuant to the settlement agreement, the plaintiff took judgment against Mr. Moody's client in the sum of $1,042.70. At the time the judgment was taken, Mr. Moody's client had remitted to him the sum of $435. Thereafter, his client employed another attorney to bring an action against Mr. Moody for damages and to recover the payments which Mr. Moody had wrongfully retained.

(2) On or about July 30, 1959, Mr. Moody was employed to represent Albert B. Sperry in a divorce action. From their office conversation, Mr. Sperry understood that Mr. Moody's total fee would be $250 plus costs. The divorce was uncontested. Mr. Sperry's share of the property settlement, amounting to $968.93, was sent to Mr. Moody by opposing counsel. Mr. Moody failed to remit the amount received to his client, after his client had made demand therefor. Approximately five months thereafter, he billed his client for $1,000 attorney's fee plus costs. Mr. Sperry complained to the bar association. Mr. Moody rejected Mr. Sperry's offer of compromise. The hearing panel found that the services rendered by Mr. Moody were reasonably worth more than $250, but substantially less than $1,000.

(3) Mr. Moody was counsel for the Bjorklund estate.

Robert G. Sly, a minor, inherited approximately $2,000. Mrs. Grace Sly, the mother of Robert, had been incarcerated in California for failing to support her child. Mr. Moody was employed by Grace Sly to represent her in the California proceeding. He prevailed upon Judge Barr of the California Superior Court to release Grace Sly into his custody. He represented to the court that she had sufficient funds to pay for the care of the child to that date; that Robert Sly had sufficient funds to pay for his future care in a California state hospital, and that the funds were available and would be promptly remitted. Upon these representations, the child was made a ward of the court on September 19, 1960. September 30, 1960, Mr. Moody received a check made payable to him from the Bjorklund estate in the amount of $2,800. $1,895.57 of this sum represented Robert Sly's share of the estate. Although many requests were made by letter and telephone, both by the juvenile probation officer and by Judge Barr, Mr. Moody failed to answer any of the correspondence or to remit any sum to the California court for the care and support of the minor.

Subsequent to the institution of the disbarment proceeding, one of Mr. Moody's attorneys advised him to pay approximately $2,000 to satisfy the minor's share of the Bjorklund estate. The sum was thereafter deposited into the registry of the court.

An examination of Mr. Moody's "Clients Funds Account" established that he had used the funds for his personal benefit, and that at no time during this period did he have a sufficient amount in his "Clients Funds Account" to pay those clients to whom the funds belonged.

(4) Mr. Moody received a check in full settlement of a personal injury claim. He deducted his attorney's fee, and withheld from the amount he remitted to his client the sum of $50 to cover his client's medical expenses. Mr. Moody never remitted this amount to the doctor. Thereafter, the doctor assigned his account to a collection agency. The collection agency contacted Mr. Moody's client, who paid the $50 plus a fee of $8 representing collection costs. At the time of the disbarment proceeding, several years later,

Mr. Moody tendered a check for $58 to reimburse his client for the money he had wrongfully failed to remit to the doctor, plus the $8 collection costs.

The hearing panel and the board of governors further found that "From 1956 until June of 1962 Mr. Moody was addicted to the use of alcohol, as a result of which he neglected his practice of law, mismanaged his business affairs, and generally handled his practice and his clients in an irresponsible manner."

From the above findings of fact, the hearing panel recommended suspension as to certain items, and disbarment as to the minor's estate. After review of the hearing panel's record, the board of governors grouped all of the charges and defalcations together and made one over-all recommendation that Mr. Moody be disbarred.

At the *en banc* hearing before this court, Mr. Moody's counsel did not challenge the factual determinations made by the hearing panel and by the board of governors, but maintained that the record shows that Mr. Moody's conduct of misfeasance and malfeasance was the result of emotional illness, designated as manic-depressive psychosis; that his previous excessive use of intoxicating liquor is no longer a problem; that, since he is now being professionally treated, he has shown progressive improvement; that at some future date he may completely recover from his emotional illness, and that, instead of adopting the recommendation of disbarment, this court should indefinitely suspend him from the practice of law until such time as his illness ceases to be a deterrent to his legal practice.

■ The legislature, in the enactment of the integrated bar act, reposed in the Supreme Court the duty of promulgating rules governing admission to practice law and the discipline of attorneys. RCW 2.48.060. RCW 2.48.230 provides that "The code of ethics of the American Bar Association shall be the standard of ethics for the members of the bar of this state."

Canon of Professional Ethics 11, RCW vol. 0, provides:

The lawyer should refrain from any action whereby for his personal benefit or gain he abuses or takes ad-

vantage of the confidence reposed in him by his client.

Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him.

■ When an attorney has been found to have violated his trust, we consider the seriousness and circumstances of the offense or offenses and are guided by the following standards: The imposition of a penalty sufficient (1) to prevent reoccurrence, (2) to deter other practitioners from engaging in such conduct, (3) to restore and maintain respect for the honor and dignity of the profession, and (4) to assure the public that the rules governing unprofessional conduct will be strictly enforced. *In re Simmons,* 59 Wn.2d 689, 706, 369 P.2d 947 (1962), and cases cited.

In *In re Case,* 59 Wn.2d 181, 184, 367 P.2d 121 (1961), we said:

Disciplinary proceedings which establish violation of the conditions are not prosecuted primarily to punish the offender, but to curb disrespect for the profession, to maintain its honor and dignity, and to assure those who seek the services of an attorney that conduct of dishonesty and lawlessness will not be tolerated.

When, by the exercise of due process, an attorney is found to have violated the trust and confidence reposed in him, he must be reprimanded, suspended or disbarred. The legislature has conferred this duty upon the court in order to assure the public that one who seeks the services of an attorney may confidently rely upon his ability and integrity.

■ From 1956 until 1962, Mr. Moody's conduct demonstrated a flagrant disregard of the well-established Canons of Professional Ethics. He deliberately deceived a client relative to the amount of settlement of a claim and misappropriated his client's funds. He refused to comply with representations made to Judge Barr in open court and over the telephone. He misappropriated a minor's funds and failed to remit them to the court. Finally, he misappropri-

ated another client's funds by failing to pay the client's medical expenses. Such conduct cannot be condoned.

Applying the standards announced above, disbarment rather than an indefinite suspension is required. We adopt the recommendations of the hearing panel and of the board of governors that Mr. Moody be disbarred and that his name be struck from the roll of attorneys. It is so ordered.

HILL, DONWORTH, FINLEY, WEAVER, HUNTER, HAMILTON, and HALE, JJ., concur.

ROSELLINI, C. J. (dissenting)—In the recent case of *In re Sherman*, 66 Wn.2d 718, 404 P.2d 978 (1965), we said that if misconduct of an attorney was the result or consequence of mental incompetency, from which he has not recovered but from which recovery is possible, he should be suspended, rather than disbarred, until such time as he can show that the probability of a recurrence is remote.

The existence of that case is not recognized in the majority opinion. I registered a dissent in the *Sherman* case, accepting the validity of the defense of mental incompetency, but contending that the attorney in that case should not be allowed to continue to practice because he had not even attempted to obtain a cure. Although the case had been pending for a considerable length of time, he had not yet sought psychiatric help and still displayed the symptoms of paranoia. Nevertheless, the majority of this court was willing to give him the benefit of the doubt and allow him to continue to practice law.

In my opinion, if this court is going to recognize a defense of mental or emotional illness, the defense should be available to all on an equal basis. As the law now stands, the availability of the defense depends upon the nature of the lawyer's offense. If his violations of the code of ethics are falsification of his application for admission and contemptuous remarks addressed to a court of a sister state, the defense is available; on the other hand, if his offenses consist of neglect of duty to clients and misappropriation of funds, the defense is not available. The question of whether the attorney has recognized his disability and is seeking

a cure is irrelevant. In my opinion, the latter consideration should be determinative of the choice between suspension and disbarment, and, in any event, the attorney should not be permitted to practice law until he can show with reasonable certainty that a cure has been effected.

The prognosis of the psychiatrists in this case tends to support a conclusion that Mr. Moody's emotional condition may improve to the extent that the probability of a recurrence is remote. Such a conclusion is also supported by the fact that Mr. Moody's conduct after the commencement of these proceedings demonstrated an awareness (belated though it was) of the nature of his problem. He immediately ceased to practice law and has not practiced since; he sought psychiatric help and was committed to institutions for psychiatric care. Drinking has been a serious symptom of his illness and he stopped drinking. He has obtained employment which does not involve the handling of funds of others; and which, according to his doctor, is calculated to improve his mental and emotional health. He has done well in this work and won the respect of his fellows. His conduct has evidenced a recognition that he has problems and a sincere desire to correct them. Fellow lawyers, as well as judges, have spoken in his behalf.

For these reasons, I am of the opinion that disbarment is not necessary at this time. An indefinite suspension should serve the purpose of protecting the public and maintaining proper discipline among members of the bar; and at the same time would not unduly penalize him for conduct which, according to the evidence before us, he was not able to control.

The defense of mental irresponsibility has only recently been recognized in this court, and, consequently, we do not have in our records another case in which this court has suspended an attorney until such time as he could show that he had become rehabilitated. However, a recent Illinois case is very much in point. It is *In re Bourgeois*, 25 Ill. 2d 47, 182 N.E.2d 651 (1962) (annotated in 96 A.L.R.2d 735). The attorney in that case was charged with the wrongful conversion of clients' funds, and it appeared at the hearing

that he had been suffering from mental and emotional strain, brought on by domestic and business difficulties of such severity that he had been taking psychiatric treatments for a year prior to the conversion. This the court considered a mitigating factor. In addition, the court said, at 52:

*Amicus Curiae*, in his usual fair manner, concedes that there are additional mitigating factors presented by the record. They are: his age (31 years), his previous good record and his subsequent unblemished conduct, the lack of other charges, the making of full restitution with relative promptness, and the fact that a number of character witnesses, including practicing lawyers and other reputable citizens, testified to his good character and reputation. Furthermore, respondent's repentance, and recognition of his problem by seeking psychiatric help, are entitled to be placed on the scales as mitigating factors.

While not all of those factors are present here, it seems to me that there is a sufficient showing that Mr. Moody is making a genuine endeavor to rehabilitate himself to justify our imposing the lighter penalty of a suspension until such time as he can demonstrate that he is capable of practicing law and abiding by the canons of ethics of the bar.

I would not disbar the respondent but would order a suspension.

---

March 30, 1967. Petition for rehearing denied.