[No. 42036. En Banc. May 11, 1972.]

*In the Matter of the Application of* ROBERT LESLIE
SCHATZ *for Admission to the Bar of the State of
Washington, Petitioner.*

 

*Robert Leslie Schatz,* pro se.

*Jack P. Scholfield* and *Jon R. Hunt,* for respondent.

HUNTER, J.—This is an application by Robert Leslie Schatz (petitioner) for a writ of mandamus to compel the Board of Governors of the Washington State Bar Association (respondent) to examine the petitioner as to his qualifications for admission to the bar, or, alternatively, for admission to practice on motion.

On June 14, 1971, Robert Leslie Schatz submitted his application to the Board of Governors of the Washington State Bar Association for permission to take the state bar examination conducted in July 1971. The petitioner is a resident of the state of California and graduated from Pepperdine University School of Law, Santa Ana, California, on July 3, 1970. The law school is not on the list of law schools accredited by the American Bar Association but has been provisionally accredited since July 1, 1970, by the committee of bar examiners of the California State Bar. The petitioner's application was rejected by the Board of Governors on the basis that he is not a graduate of an approved law school within the scope and meaning of Admission to Practice Rules 2A, which reads:

A. *Definitions*

A "general applicant" means either (1) a graduate of an approved law school who does not qualify as an attorney applicant under Rule 3, or (2) a registered law clerk who has satisfactorily completed the course of study prescribed by these Rules.

An "approved law school" means a law school approved by the board of governors. The board of governors shall keep a list of approved law schools on file with

the State Bar Association and the Clerk of the Supreme Court.

The Board of Governors maintains a policy that an approved law school is a law school approved by the Section of Legal Education and Admission to the Bar of the American Bar Association. During the years 1955 through 1965, the Rules for Admission to Practice expressly provided the same (Rule 2B, 47 Wn.2d xxii, xxiii, 1955-65), and the respondent has since continued to adhere to that rule or policy.

The petitioner filed this mandamus proceeding on June 24, 1971. It was ordered, on July 1, 1971, that the petitioner's application be set for hearing which is now before this court.

The petitioner challenges the constitutionality of the Washington State Bar Act (RCW 2.48 *et seq.*) on the basis that the authority delegated to the Board of Governors in carrying out its powers constitutes an unlawful delegation of legislative authority contrary to Const. art. 1, § 3, for the reason that no guidelines or standards are enumerated in the statute for the exercise of such power. Our examination of the record, however, shows only one section of the State Bar Act that affects the rights of the petitioner relative to the asserted unlawful delegation of legislative authority. We therefore need to consider only that section, which is RCW 2.48.060:

> The said board of governors shall likewise have power, in its discretion, from time to time to adopt rules, *subject to the approval of the supreme court,* fixing the qualifications, requirements and procedure for admission to the practice of law; and, *with such approval,* to establish from time to time and enforce rules of professional conduct for all members of the state bar; and, *with such approval,* to appoint boards or committees to examine applicants for admission; and, to investigate, prosecute and hear all causes involving discipline, disbarment, suspension or reinstatement, and make recommendations thereon to the supreme court; and, *with such approval,* to prescribe rules establishing the procedure for the investigation and hearing of such matters, and establishing

county or district agencies to assist therein to the extent provided by such rules: *Provided, however,* That no person who shall have participated in the investigation or prosecution of any such cause shall sit as a member of any board or committee hearing the same.

(Italics ours.)

The petitioner's contention that this section of the State Bar Act constitutes an unlawful delegation of *legislative* authority is wholly without merit. The legislature expressly recognized the primacy of the court in the area of admissions and disbarment when it made the board's powers subject to the approval of the Supreme Court under RCW 2.48.060. The language of the statute clearly lodges all ultimate authority in the Supreme Court. The Board of Governors, acting in this area, is an arm of the court, independent of legislative direction. In our recent case, *State ex rel. Schwab v. State Bar Ass'n,* 80 Wn.2d 266, 493 P.2d 1237 (1971), we cited *Clark v. Washington,* 366 F.2d 678 (9th Cir. 1966), and *Campbell v. Washington State Bar Ass'n,* 263 F. Supp. 991 (W.D. Wash. 1967), wherein it was held that the Washington State Bar Association acts as an 'arm of the Supreme Court in conducting proceedings under this section and, in that capacity, is an integral part of the judicial process.

It is well settled by repeated decisions that the power to admit and enroll attorneys in the state of Washington, together with the power to disbar, is exclusively in the Supreme Court. *See In re Chi-Dooh Li,* 79 Wn.2d 561, 488 P.2d 259 (1971); *In re Ballou,* 48 Wn.2d 539, 295 P.2d 316 (1956); *State ex rel. Laughlin v. State Bar Ass'n,* 26 Wn.2d 914, 176 P.2d 301 (1947); *In re Levy,* 23 Wn.2d 607, 161 P.2d 651, 162 A.L.R. 805 (1945); *In re Bruen,* 102 Wash. 472, 172 P. 1152 (1918); *In re Lambuth,* 18 Wash. 478, 51 P. 1071 (1898). This rule is in conformity with the established rule throughout the country that admission to practice is the exercise of a judicial function and one of the inherent powers of the court. *See In re Nebraska State Bar Ass'n,* 133 Neb. 283, 275 N.W. 265 (1937); *Rosenthal v. State Bar*

*Examining Comm.*, 116 Conn. 409, 165 A. 211, 87 A.L.R. 991 (1933); *Brydonjack v. State Bar*, 208 Cal. 439, 281 P. 1018, 66 A.L.R. 1507 (1929); *In re Day*, 181 Ill. 73, 54 N.E. 646 (1899). We held in the case of *In re Moody*, 69 Wn.2d 808, 420 P.2d 374 (1966), at 811, that:

> The legislature, in the enactment of the integrated bar act, reposed in the Supreme Court the duty of promulgating rules governing admission to practice law and the discipline of attorneys.

In pursuance thereof, this court has adopted a comprehensive set of rules governing the qualifications, requirements and procedures for admission to practice. *See* Admission to Practice Rules. The Board of Governors must act within these specific and well defined guidelines, and is properly vested, therefore, with the authority to establish certain rules or policies incident to the proceedings for determination of an applicant's qualifications for admission, including the power to determine what law schools shall be approved.

■ The question of whether the Board of Governors may adhere to a policy that an approved law school necessarily be one which meets the minimum criteria and standards approved by the American Bar Association has been passed upon in other jurisdictions under circumstances similar to this case. One of the leading cases was *Rosenthal v. State Bar Examining Comm.*, *supra*, wherein the petitioner was a graduate of a law school not on the list of schools approved by the American Bar Association. The examining committee had adopted a rule that the schools approved in accordance with the rules of court in Connecticut be the same as those approved by the Council of the American Bar Association on Legal Education and Admission to the Bar. The petitioner had challenged the authority of the examining committee and the reasonableness of its act. The following observation was made by that court in response to the petitioner's claim that the bar committee had exceeded its powers and acted unreasonably, at page 417:

> Nor can it be maintained that the bar examining com-

mittee exceeded its powers or acted unreasonably in approving the same schools as the Council of the American Bar Association on Legal Education and Admission to the Bar. It is a matter of common knowledge that the American Bar Association is a representative body composed of members of the bar from every part of the Union; an organization national in scope, whose purpose is to uphold and maintain the highest traditions of the legal profession. There is nothing in this record to indicate either arbitrary or unreasonable action on the part of the examining committee in approving the same schools as the Council of the American Bar Association on Legal Education and Admission to the Bar.

Other similar cases are: *Hackin v. Lockwood,* 361 F.2d 499 (9th Cir. 1966); *Henington v. State Bd. of Bar Examiners,* 60 N.M. 393, 291 P.2d 1108 (1956); *State ex rel. Ralston v. Turner,* 141 Neb. 556, 4 N.W.2d 302, 144 A.L.R. 138 (1942). In the instant case the policy followed by the Board of Governors is the same policy expressly approved by this court for over 10 years in its rule (Rule 2B, 47 Wn.2d xxii, xxiii, 1955-65) providing that an approved law school shall be a law school accredited by the Section of Legal Education and Admissions to the Bar of the American Bar Association. If this court was heretofore satisfied to rely upon the expertise of this section of the American Bar in making this determination, it cannot now be said that the Board of Governors has acted unreasonably in following this same policy.

Rules for admission to the bar are, of course, general in their specifications. They apply to classes of applicants and are drawn to meet normal conditions. They cannot very well be tailored to meet the special merits of individuals or of individual law schools. To require the Board of Governors to look into the individual qualifications and standards of every nonaccredited law school whenever a graduate from that school applies to take the bar examination, would be to impose upon the board an unreasonable burden. The policy of the board sets forth a condition precedent to take the bar examination in this state and it applies to all general applicants who are not otherwise qualified under the

Admission to Practice Rules. It is correlative and explicit with the ultimate purpose of all regulations for the admission of attorneys to assure the courts the assistance of advocates of ability, learning, and sound character and to protect the public from incompetent and dishonest practitioners. The policy is a valid and reasonable exercise of the discretion of the Board of Governors as heretofore directed and approved by this court.

The petitioner argues that he did not have notice of the policy or rule of the Board of Governors for its approval of law schools since it was not noted or defined in its rules booklet and that the policy, therefore, cannot apply to his situation. This argument is without merit. The failure of the board to delineate its policy in the rules booklet was in no way prejudicial to the plaintiff since the approved law schools are listed in the booklet and Pepperdine University School of Law is not included in the list.

■■ The petitioner further argues that in any event the Board of Governors is obligated by the full faith and credit clause, U.S. Const. art. 4, § 1, to extend full faith and credit to a provisional accreditation of the petitioner's law school by the committee of bar examiners of the California State Bar. The implication is that since California has allowed such graduates to take the California bar examination, it is incumbent upon the state of Washington to allow such graduates to take the Washington bar examination. We do not find that the constitutional provision for full faith and credit is applicable here. A state is not required to subordinate its laws and policies concerning peculiarly domestic affairs and matters involving local sovereignty to the law and policies of other states. *Magnolia Petroleum Co. v. Hunt,* 320 U.S. 430, 88 L. Ed. 149, 64 S. Ct. 208, 150 A.L.R. 413 (1943), *rehearing denied,* 321 U.S. 801, 88 L. Ed. 1088, 64 S. Ct. 483 (1944), and cases cited therein; *Gaskins v. Gaskins,* 311 Ky. 59, 223 S.W.2d 374 (1949). The qualifications for the admittance of attorneys to practice before the courts of the State of Washington is peculiarly a domes-

tic affair within the ambit of the jurisdiction of the judicial branch of government of this state.

▇ The petitioner raised a contention in oral argument which we will not consider as it was not discussed or supported by argument in his brief. *State ex rel. Schwab v. State Bar Ass'n*, 80 Wn.2d 266, 493 P.2d 1237 (1971), and cases cited therein.

For the reasons set forth herein, we hold that the petition of Robert Leslie Schatz for writ of mandamus compelling the Board of Governors of the Washington State Bar Association to examine the petitioner as to his qualifications for admission to the bar must, upon the showing submitted, be denied. His application for admission to practice without examination and upon motion is likewise denied.

HAMILTON, C.J., FINLEY, NEILL, and STAFFORD, JJ., and OTT, J. Pro Tem., concur.

HALE, J. (dissenting)—To decide this case, the court must locate the source of governmental power and trace it to its final application. If a significant break is found between the source of power and its final application, quite likely there exists at that place a significant departure from the constitution. Where those powers of government reserved by the people to themselves or to their elected representatives have been transmuted to a private agency, there has probably taken place an unconstitutional transfer of public sovereignty to a private organization. That, I think, is what happened here.

The court has located, I think, but failed to assess the significance of a break at the place where the Washington State Bar Association, an agency of the state owing its legal existence to and subject to abrogation by the state (State Bar Act, Laws of 1933, ch. 94, p. 397), has attempted unlawfully to subdelegate some of its delegated authority to the American Bar Association. By a process of extraconstitutional transmutation, the Washington State Bar Association, whether intentionally or inadvertently, whether by action or inaction, has surrendered to the American Bar

Association, a wholly private organization, its delegated powers of government to accredit or disqualify law schools. This transfer of delegated authority, I think, has worked to deprive Mr. Schatz of his privilege under the Fourteenth Amendment to take the state bar examination, and operated to abrogate the full faith and credit which this state should give to the official acts of the State of California where he is qualified.

Until 1933, the bar association of this state was a wholly private organization, as are the local bar associations today. Membership in either was not a prerequisite to practicing law. Then, in 1933, the legislature organized and established the Washington State Bar Association, designating it as *an agency of the state,* making membership in it compulsory to all practicing lawyers and deputing to it, as one of its principal functions, the duty to establish and enforce standards for the academic training of lawyers. RCW 2.48.010. The bar's authority, while adequate to accomplish the purpose, is by necessity limited and narrow, for it is to be exercised only "for the purpose and with the powers . . . set forth". RCW 2.48.010. The ultimate power of the bar association, as an agency of the state, to reach and enforce a decision must come to rest somewhere before it leaves the outer limits of direct responsibility to the people —a point reached, I think, at and not beyond the Board of Governors of the State Bar Association.

The board's powers can be traced directly to the source of sovereignty, the American Bar Association's cannot. Removed both in its composition and its function from the basic sources of governmental power and possessing limited administrative powers to establish and enforce standards for law schools and their graduates, the Board of Governors, as a managing organ of a state agency, is, I think, without capacity to delegate that power further. The board's main functions as prescribed by statute are (1) discipline of attorneys and (2) the accrediting of applicants for the bar and, within that function, the accrediting of law schools. It has many other functions, of course, and has

willingly undertaken others not prescribed by law, but these are its two most important. As to the first, the court is aware of the active role taken; as to the second, the accreditation of law schools and applicants for the bar, however, there is little shown in this record other than a pervading somnolence and lethargy.

The record, as I read it, shows that the Washington State Bar Association failed to discharge those functions delegated to it by the legislature. In failing to establish standards and qualifications for the accrediting of law schools, it left a vacuum that could not be constitutionally filled by the American Bar Association and should not be filled by the thwarted hopes of petitioner. Petitioner should not be required to pay the price of the bar's inaction.

Authority to accredit or disaccredit law schools was granted by the legislature to the Board of Governors of the Washington State Bar Association in RCW 2.48.060, which, in part, states:

> The said board of governors shall likewise have power, in its discretion, from time to time to adopt rules, *subject to the approval of the supreme court, fixing the qualifications, requirements and procedure for admission to the practice of law* . . .

(Italics mine.) So far as this record reveals, the bar association has done nothing to meet these delegated responsibilities. Aside from promulgating a few general rules from time to time and mechanically adopting as its own any list of law schools which might be approved by the American Bar Association, the bar chose to ignore the mandate placed upon it by the legislature with respect to accrediting law schools. This is made clear, I think, in the Admission to Practice Rules (APR) under which Mr. Schatz has been refused permission to take the bar examination:

> Rule 1 Classification of applicants. Every person desiring to be admitted to the bar of the State of Washington must pass a bar examination and satisfy all of the requirements of these Rules applicable to the classification of applicant to which he belongs.
> For the purpose of these Rules, applicants for admis-

sion to practice in the State of Washington are classified either as "general applicants" or as "attorney applicants."

Rule 2 General applicants. A. *Definitions*

A "general applicant" means either (1) a graduate of an approved law school who does not qualify as an attorney applicant under Rule 3, or (2) a registered law clerk who has satisfactorily completed the course of study prescribed by these Rules.

An "approved law school" means a law school approved by the board of governors. The board of governors shall keep a list of approved law schools on file with the State Bar Association and the Clerk of the Supreme Court.

B. *Qualifications*

A general applicant, in order to be permitted to take the bar examination, must

(1) present satisfactory proof of either (a) graduation from an approved law school, or (b) satisfactory completion of the course of study prescribed for a registered law clerk by these Rules;

(2) Be either: (a) a citizen of the United States, or (b) an alien permanently residing in the United States in accordance with Federal Immigration and Naturalization Law who has legally declared his intent to become a citizen and is proceeding with due diligence toward naturalization;

(3) be of good moral character;

(4) execute under oath and file with the State Bar Association within the time specified in Section C of this Rule 2, two copies of his application, one of which shall be in his own handwriting, in such form as may be required by the board of governors. Additional proof of any fact stated in the application may be required by the board. In the event of the failure or refusal of an applicant to furnish any information or proof, or to answer any interrogatories of the board pertinent to the pending application, the board may deny the application. The form of application shall be provided by the board, and the contents thereof shall be such as the board may direct from time to time;

(5) pay, upon the filing of the application, an examination and admission fee in the amount prescribed in Section C of this Rule 2 and also an investigation fee in the

amount prescribed in Section C of this Rule 2. The investigation shall cover all phases of the applicant's qualifications for admission, as the board may deem necessary. No refund of any examination and admission fee shall be made unless the request to withdraw the application is made at least ten (10) days in advance of the examination date. The investigation fee is not subject to refund.

As noted, aside from the rather terse reference to approved law schools, the bar association has done little as a state agency to implement the rules on admission and to carry out one of its main purposes. That the bar has undertaken other tasks and assumed other functions—of whatever importance—did not, I think, relieve it of the duty of discharging this most basic one. No standards for law schools have been prescribed by the Board of Governors; it has taken no steps to see that any standards whatever have been met. Accordingly, the bar's well-supported contention (*Clark v. Dwyer*, 56 Wn.2d 425, 353 P.2d 941 (1960); *Senior Citizens League, Inc. v. Department of Social Security*, 38 Wn.2d 142, 228 P.2d 478 (1951); *State ex rel. Washington Toll Bridge Auth. v. Yelle*, 195 Wash. 636, 82 P.2d 120 (1938)), that, although the legislature cannot delegate its powers to make law, it can delegate the power to determine the facts or state of things upon which application of the law will depend, militates more strongly for Mr. Schatz than for the bar. Contrary to the bar's position, those cases state one of the controlling principles upon which petitioner should be allowed to take the examination. Granted a power delegated to it by the legislature—or, even as the court now implies, perhaps from this court, too—to find the state of facts or condition of things upon which a law school shall be listed as approved, the record shows that the Board of Governors took no steps whatever to find and declare such facts. It did no more than promulgate a prepared list already promulgated by the American Bar Association, a wholly private organization.

Administrative authority under which the bar presumed to act in accrediting law schools is set out in RCW 2.48.060

which gives the Board of Governors—with the approval of this court—

> power, in its discretion, from time to time to adopt rules, subject to the approval of the supreme court, fixing the qualifications, requirements and procedure for admission to the practice of law . . .

In discharging this administrative responsibility, the Board of Governors, so far as this record shows, has done no more than to proclaim, so far as pertinent here, that an applicant for the bar must be a graduate of an approved law school (APR 2(a)), an approved law school means one approved by the board, and a list thereof shall be kept on file with the state bar association and the clerk of the Supreme Court. To establish and maintain a list of law schools, the bar simply declared as its own the list of law schools specified and to be specified by the American Bar Association. Even the list itself promulgated by the Board of Governors effective April 15, 1971, in the pamphlet furnished petitioner is entitled "Law Schools Approved by the American Bar Association," with no indication that those are the schools also "approved" by the board.

At no point in the record does respondent show the process by which the American Bar Association list was adopted as its own. In an affidavit by one of its officers, respondent states, "[I]t would appear that the Board of Governors of the Washington State Bar Association has had adopted or been instructed by the Supreme Court of the State of Washington to adopt the above policies during the year 1933 or 1934." On March 9, 1934, the Board of Governors advised Willamette University that its law school, in order to be accredited, must first be placed on the American Bar Association's list of accredited law schools. Except for these actions, there is no showing of hearings on any proposed rule, no record of the adoption by or of any consideration at a meeting of the Board of Governors of such a rule and no record of the approval by this court of any such rule as is required by statute. RCW 2.48.060. By rule adopted in 1955, this court prescribed that the Ameri-

can Bar Association list should govern the accreditation of law schools whose applicants should be eligible to take the Washington bar examination. But that rule has since been abrogated and replaced by another rule, APR 2A; since the effective date of the new rule, there has been no basis for requiring American Bar Association certification for accreditation except what the respondent describes as a "policy" that an approved law school is a law school approved by the American Bar Association. There is no basis in the statutory scheme, in the rules of this court, or in a constitutional form of government, for giving such effect to an informal undefined "policy" of any governing body infused with the power of the state.

As matters stood on June 14, 1971, when Mr. Schatz submitted his application to take the July, 1971, bar examination, the board refused him on the stated ground that Pepperdine University School of Law "does not have ABA accreditation." This ground of refusal amounted in essence to a categorical declaration that the power to approve or reject law schools lay in the American Bar Association. It was a concession that the Board of Governors had uncritically rubberstamped the American Bar Association's lists, past, present and future. Again, the Board of Governors' answer to the petition for mandamus reiterates this concession when it says:

> [T]he Board of Governors of the Washington State Bar Association have presently determined that an approved law school is one which meets the minimum standards as set forth *by the Section of Legal Education and Admissions to the Bar of the American Bar Association.*"

(Italics mine.) The board's further answer to the petition that

> Attached hereto, marked Exhibit "B" and incorporated herein by this reference, is a true and correct copy of "factors bearing on the initial approval of law schools by the American Bar Association" as set forth by the Council of the section of legal education and admissions to the Bar of the American Bar Association. That consistent with the requirement that certain general applicants be

graduates of law schools approved by the American Bar Association, the Washington State Bar Association has adopted such criteria and standards as being the minimum criteria and standards necessary for the approval of law schools.

I think pleads affirmatively the very conclusion upon which petitioner rests his claim: that the board in labeling the American Bar Association's list as the approved list is adopting everything done by the American Bar Association's section on legal education and admissions in preparing the list. It effectually acknowledges that the board did nothing on its own to set up standards or to enforce compliance with them for accrediting law schools.

In deciding whether a law school's graduates are qualified for admission, I do not believe that the American Bar Association's standards should be ignored. On the contrary, they should be carefully considered and weighed, for it is an organization competent and qualified to conduct investigation and studies of legal education and to report its findings and observations. But the task of studying the whole matter of legal education as it affects the public interest, and that of promulgating minimum standards for educational institutions is a duty placed by the legislature—and perhaps by this court—directly upon the Washington State Bar Association. And the task does not end with the adoption of standards; there is the further and perhaps larger task of seeing to it that the standards adopted have been complied with. To that end, the state has made a state agency of the Washington State Bar Association. The board must look to many reliable sources of information, including the American Bar Association, to accomplish this singular purpose. Its goal, as prescribed by statute is, as I see it, to adopt and enforce such reasonable but effective standards of education in the law as will provide reasonable assurance to the people of this state that applicants for the bar will be equipped with a sound education in the law and are of good moral character.

If, as the statute says (RCW 2.48.010), the state bar is an

agency of the state, we need not in this case decide whether it be a creature of the legislature or of this court or a composite. As a state agency dealing in the area of prescribing minimum standards for law schools, it does, I think, fall within the regulatory features of the Administrative Procedure Act, RCW 34.04, not being excluded therefrom by statute. RCW 34.04.150. It is quite likely that that act can be complied with short of a declaration of specific standards expressly adopted, if by a procedure adequate to due process of law. If the bar has failed to comply and has established no means or system for accreditation of law schools, then it must, as a rational alternative, give full faith and credit to the official accreditation of those states having standards as high as ours. Petitioner is accredited to take the bar examination of the State of California; he should be allowed to take the bar examination of the State of Washington.

Although the standards for approved law schools set out by the American Bar Association's committee are obviously designed and may well serve to prevent the accreditation of those law schools established and maintained purely as commercial enterprises and to eliminate the proverbial "diploma mill" from accreditation, this objective affords scant protection to the state. It is one thing to fix standards for minimum classroom hours, teacher qualifications, curriculum, size and quality of library, examination requirements and quite another to see to it that these standards are enforced. The Board of Governors has no power to compel the American Bar Association to enforce its written standards and to withhold approval from law schools which fail to meet them. In adopting as its own the American Bar Association's list of accredited law schools—in declaring the American Bar Association's list to be the sine qua non for aspirants to the bar—the Board of Governors commits an act of pure faith, both as to the intentions and the capabilities of the American Bar Association.

The legislature, the bar and the Supreme Court of the State of California, when compared to those of this state,

have, I think, demonstrated the proper exercise of a delegated administrative authority in prescribing and enforcing standards for admission to the bar. And petitioner is, under their standards and procedures, permitted to take that bar examination. Admissions to practice in California, so far as here pertinent, are based on a certification procedure authorized by statute. Cal. Bus. & Prof. Code § 6060 (West 1962). The state bar examining committee must certify to the Supreme Court that the applicant is a citizen of the United States, at least 21 years of age, is of good moral character, has been a bona fide resident of California for at least 2 months immediately prior to taking his final bar examination; has met the educational requirements set forth in a detailed series of statutes and rules; and has passed a final bar examination.

In California, law students who have been admitted to accredited law schools from unaccredited prelaw colleges or who are attending law schools not accredited under the rules adopted by the examining committee must pass a first-year law student's examination in contracts, torts and criminal law given by the state's bar examining committee. Cal. Bus. & Prof. Code § 6060 (h) (i) (West 1962); Cal. Admission to Practice Rule 6, § 61 (West 1962). Rule 6, § 61, enforces this first-year examination in providing that "An applicant who is required to take such examination shall not receive credit for any law study until he has passed such examination or become entitled to exemption therefrom."

The committee of bar examiners in California is a state agency with specifically delegated authority to accredit law schools. Cal. Bus. & Prof. Code § 6060 (West 1962); Cal. Admission to Practice Rule 18 (West Supp. 1971). That court rule says in § 182, standard F, that a law school to be accredited "shall maintain a sound admission policy, designed to exclude at the outset, the obviously unqualified." Standard E says that a law school must have an adequate library for the use of its students; standard C says that it must have a competent administrative head and a compe-

tent faculty devoting adequate time to teaching and student counseling, presumably in the words of former Admission to Practice Rule 6, § 65(d), *"to insure adequate personal acquaintance and influence with the law students."* (Italics mine.)

Another of the specific standards explicitly set forth is Cal. Admission to Practice Rule 9, § 91 (West Supp. 1971). It requires of the applicant for admission a legal education including "Graduation from an accredited law school requiring substantially the full time of its students for at least three years, or . . . a part only of the time of its students for at least four years," with other alternative requirements for certain special cases and with specific mandates to the schools defining the number of classroom hours (270) constituting a "year."

Under section 182, standard A, a law school cannot be operated as a commercial enterprise or for private profit and remain accredited. Standard I requires a law school to keep complete records on its students and records on all other matters needed to show whether the law school is complying with the standards of accreditation. Section 183 requires the *committee of bar examiners* to "publish annually a list of Law Schools in California and designate therein which of such schools are" accredited, fully or provisionally, or preliminarily approved, or not accredited. Section 184 provides, upon due notice, for sufficient cause for the disaccrediting of any accredited law school by the committee of bar examiners.

Although section 183 provides that a law school approved by the American Bar Association is to be deemed prima facie accredited unless it appears to the committee that the school is not conforming to the standards established by the statutes of California and the rules enacted in pursuance of them, failure of a school to be on the list of the American Bar Association does not disaccredit it. It is the bar examining committee acting under specific rules and standards which does the accrediting.

In now sustaining the bar's position in this case, the

court has now gone far beyond the rationale of *State v. Bonham*, 93 Wash. 489, 161 P. 377 (1916). In that case, this court upheld a statute which declared that certificates of graduation from medical schools approved by the Association of American Colleges would be acceptable. That holding was apparently dependent upon the lack of any available administrative agency capable at the time of evaluating medical schools. Here we have a state agency presumably clothed with powers to function as an administrative agency of the state and charged with fixing the standards and enforcing them. As I see it, the case before us more closely approximates the circumstances of *State ex rel. Kirschner v. Urquhart*, 50 Wn.2d 131, 310 P.2d 261 (1957).

In *Kirschner*, relator sought a writ of mandate to compel the director of licenses to issue her a license to practice medicine. Her application showed and the state did not deny that she was a citizen of the United States, had a doctor of medicine degree from the University of Vienna, had served a statutory internship, and had passed both the basic science and medical examinations. The University of Vienna Medical School, however, was not on any list of approved foreign medical schools for, at the time of relator's graduation, the Association of American Medical Colleges had no approved or accredited list of foreign medical schools. In holding unconstitutional the statute which, in limiting accreditation to listed schools, denied accreditation to that nonlisted university, the court said:

> It would have been proper for the legislature to have enacted that accredited schools were only those on a list then in being, whether prescribed by the American Medical Association, or some other learned society; but it was not within permissible constitutional limits to define accredited institutions as those on a list not then in existence, irrespective of the standing of the society which might compile such future list.
>
> *Legislative power is nondelegable.* When the legislature declares that schools on an existing list are accredited schools and those not on an existing list are not, it is legislating; but when it declares that accredited schools shall be those on a list thereafter to be promul-

gated, irrespective of the authority promulgating such list, it is attempting to delegate legislative power, and such an act is unconstitutional.

(Italics mine.) *State ex rel. Kirschner v. Urquhart, supra* at 135.

This, I think, brings us to an impasse that can be resolved only by applying the constitutional principle of full faith and credit. Petitioner is a successful graduate of Pepperdine Law School, a law school which is not on the American Bar Association's approved list but does provisionally meet those standards of the State of California. He will be allowed to take the California bar. Between these two poles, the American Bar Association on the one side and the State of California on the other, lies a void in Washington where, so far as I can see, no standards whatever have been established by the agency designated by law to make them. Since on their face the standards of California for admission to the bar are high and effectual, I think full faith and credit under the federal constitution should be given the official acts of a sister state. The certificate authorizing petitioner to take the bar examination of California, a state of the union having strict standards of proficiency, learning and character, in the absence of any enforceable standards here, should be treated with the status to which it is entitled under the constitution.

The court relies extensively upon the rationale of *Rosenthal v. State Bar Examining Comm.,* 116 Conn. 409, 417, 165 A. 211, 87 A.L.R. 991 (1933), and quotes from the Supreme Court of Connecticut's opinion in that case that "It is a matter of common knowledge that the American Bar Association is a representative body composed of members of the bar from every part of the Union; an organization national in scope, whose purpose is to uphold and maintain the highest tradition of the legal profession." But that opinion appears to me to ignore the salient and ineluctable point that, regardless of its intrinsic virtues and nobility of purpose, the American Bar Association is a purely private

organization and therefore one to which none of the state's sovereignty can or ought to be delegated.

I would, therefore, grant the petition and direct that Robert Leslie Schatz, petitioner, be permitted to sit for the next ensuing bar examination upon his payment of the requisite fees.

ROSELLINI, J., concurs with HALE, J.