[No. C.D. 5308.    En Banc.    December 8, 1967.]

*In the Matter of the Disciplinary Proceeding Against* WILLIAM H. RANDALL, *an Attorney at Law.** 

*Richard F. Broz,* for Board of Governors.

NEILL, J.—William H. Randall was admitted to the practice of law in the state of Washington on February 20, 1962, following which, and until some date in the latter part of 1966 or early 1967, he practiced law and resided in the city of Spokane.

In September, 1966, a formal complaint was filed before the Board of Governors of the Washington State Bar Association charging Mr. Randall with professional misconduct in violation of the Canons of Professional Ethics. There were five specific charges of misconduct under Canon of Professional Ethics 11 and a sixth charge alleging that the first five items of the complaint constitute violation of Rule

*Reported in 435 P.2d 26.

III M of the Rules for Discipline of Attorneys (now DRA III M).[1]

Pursuant to the rules, a hearing panel appointed by the president of the Washington State Bar Association received and heard exhibits and testimony and recommended to the Board of Governors of the Washington State Bar Association that Mr. Randall be permanently disbarred as an attorney in the state of Washington. Upon review by the Board of Governors, the findings, conclusions and recommendations of the hearing panel were adopted and such Board has recommended to this court that Mr. Randall be permanently disbarred as an attorney in the state of Washington.

Personal service of the complaint and other papers herein upon the respondent was unavailing as diligent inquiry and search failed to disclose his whereabouts. Substituted service of the formal complaint and other papers in these proceedings upon the respondent was effected by, in some instances, delivering of a copy of the same to respondent's wife at their usual place of abode and, in other instances, by mailing to respondent's last known place of abode and office address, all pursuant to Rule VIII B (now DRA VIII B). Respondent has not answered the complaint herein nor has he appeared in any manner at any stage of these proceedings either in person or by counsel.

The hearing panel made the following factual determinations:

(1) Respondent undertook the representation of vendors with respect to a real-estate transaction wherein he was entrusted with the deed, was to complete the closing, render a closing statement, and make remittance of the purchase price less closing costs to his clients. The transaction was consummated by the purchaser mortgaging the premises and the entire net proceeds of this mortgage were remitted directly to the vendors. However, this left a bal-

---

[1]The proceedings held hereunder were conducted pursuant to Rules for Discipline of Attorneys adopted June 25, 1965, effective July 16, 1965, published in 66 Wn.2d. Insofar as pertinent to these proceedings, said rules are identical to the current DRA effective July 1, 1967.

ance of $1,753.83 due the vendors. The vendors requested information from respondent as to the payment of the balance due them but, in spite of repeated requests and demands, respondent ignored his clients and has failed to render a closing statement. On September 3, 1965, the purchaser in fact of the real estate delivered to respondent the sum of approximately $2,000 in cash as payment of the balance on the real-estate transaction in question. The closing deed was recorded by the title insurance company on September 8, 1965, and finally, on November 29, 1965, respondent gave his personal check to the vendors for the balance of the purchase price, but this check was dishonored by reason of insufficient funds. Numerous requests were made of the respondent to arrange for payment of this NSF check, but such requests were ignored. Complaint was made by the vendors to the Local Administrative Committee of the bar, who communicated with respondent, but respondent consistently neglected to appear for promised conferences and consultations with such committee. Ultimately, and on March 7, 1966, the purchaser in fact of the real estate made payment to vendors of the contract balance. Thus vendors ultimately received their full purchase price but the purchaser in fact made payment of the balance twice, once in cash to respondent and again direct to vendors to settle the controversy.

(2) Respondent undertook the representation of a vendor with respect to a sale of real estate which was to be consummated through an escrow at Fidelity Savings and Loan Association in Spokane. Respondent received a sum of money to cover closing costs including the real-estate transaction tax. The transaction documents, except the deed to consummate the deal, were delivered to the escrow agent but, in spite of frequent and numerous demands made upon respondent between May, 1965, and December, 1965, such deed was never delivered to the escrow agent nor has the real-estate transaction tax been paid. Failing to receive the deed, the escrow agent returned all papers to respondent and the transaction was never consummated as intended.

Vendor has made frequent and continued demand upon the respondent for the return of the moneys for payment of the transaction tax and other closing costs but respondent has consistently failed to comply with such requests. Again, the Local Administrative Committee communicated with respondent concerning the complaint by the vendor, but respondent failed to keep appointments and failed to cooperate with the committee. The funds left with respondent for the closing costs have never been repaid to vendor nor used to pay the transaction tax and other closing costs.

(3) Respondent undertook the representation of a woman injured in an automobile accident. On or about October 12, 1965, respondent received a settlement check from an insurance carrier, whereupon he deducted from said settlement check one-third of the gross recovery as his fee and also withheld an amount in excess of $200 for the purpose of paying directly the doctors and hospital accounts of his client. The balance of the settlement check was delivered by respondent to his client. Contrary to his promise, respondent has consistently failed and neglected to pay the doctors and hospital and has failed and neglected to return any portion of such funds to his client.

(4) Respondent undertook the representation of another woman with respect to a claim for personal injuries and ultimately received a settlement check in the sum of $500 from an insurance carrier. Respondent informed his client that it was necessary for her to endorse the check and then to await its clearance before she could be paid. The client endorsed the check and returned it to respondent who did receive the $500. After demands made upon respondent by his client, respondent did pay her the sum of $100 by his personal check but continues to withhold from her the sum of $300 (there being an agreed fee of $100).

(5) In February, 1966, respondent undertook the representation of a woman in a divorce proceedings and was paid $40 by her. Despite repeated attempts by the client to contact respondent regarding her divorce, she was unsuc-

cessful and respondent has consistently failed and neglected to pursue this matter or return her money to her.

Respondent's office telephone has been disconnected and he has not returned to his business office. Further, respondent and his family have vacated the home in which they had been living and his present whereabouts are unknown.

(6) The charge under the sixth item of the complaint against respondent is an allegation that the acts and omissions under the first five items of the complaint constitute violation of Rule III M of the Rules for Discipline of Attorneys (now DRA III M).

The hearing panel recommended disbarment and the Board of Governors has concurred in such recommendation. As noted above, respondent has not appeared at any stage of these proceedings in any manner nor did he appear in person or by counsel at the *en banc* hearing before this court.

As pointed out in *In re Chantry*, 67 Wn.2d 190, 407 P.2d 160 (1965), and in *In re Moody*, 69 Wn.2d 808, 420 P.2d 374 (1966), RCW 2.48.230 provides that the code of ethics of the American Bar Association shall be the standard of ethics for the members of the bar of this state. Canon of Professional Ethics 11, RCW vol. 0, provides:

> The lawyer should refrain from any action whereby for his personal benefit or gain he abuses or takes advantage of the confidence reposed in him by his client.
>
> Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him.

The findings herein show clear violation of Canon 11 and respondent's failure to cooperate with the Local Administrative Committee is violative of Rule IV G of the Rules for Discipline of Attorneys (now DRA IV G). Accordingly, respondent is subject to discipline under paragraphs C, J, L and M of the aforesaid Rule III. The trial committee and the Board of Governors have recommended that respondent

be disbarred as the penalty for such violations and we adopt the recommendation of the Board of Governors.

Under the terms of DRA XII it is incumbent upon this court to fix the amount of costs and expenses for this disciplinary proceeding. The statements of costs as filed with the Board of Governors and with this court total $844.76. Our review of these statements show the items thereon in the amounts thereof to be proper and reasonable and such sum is hereby assessed against respondent payable forthwith. Further, attention of respondent is called to provisions DRA XII A6 that "no disbarred attorney may file a petition for reinstatement until the amount of the costs and expenses so fixed has been fully paid."

It is ordered that William H. Randall be, and he hereby is, disbarred from the practice of law in the state of Washington, and his name is hereby stricken from the roll of lawyers entitled to practice law in this jurisdiction.

ALL CONCUR.