583 P.2d 251
**STATE of Arizona, Appellant,**

v.

**Barbara Ann WILLIAMS aka Barbara Ann Weatherspoon, Appellee.**

No. 4184.

Supreme Court of Arizona,
In Banc.

July 25, 1978.

Bruce E. Babbitt, former Atty. Gen., John A. LaSota, Jr., Atty. Gen., William J. Schafer III, Chief Counsel, Crim. Div., Carol Benyi, Asst. Attys. Gen., Phoenix, for appellant.

Ross P. Lee, Maricopa County Public Defender, Paul J. Prato, Deputy Public Defender, Phoenix, for appellee.

GORDON, Justice:

The state alleges that from December, 1969, through 1975, appellee applied for and received various forms of public assistance including food stamps. In January, 1975, the Department of Economic Security discovered that appellee had continued to accept food stamps between September, 1972, and December, 1974, without disclosing to the Department that she had during that time been employed at Motorola. The state further contends that throughout this period appellee had been contacted periodically by Department employees and that, at each interview, appellee had stated that she was unemployed after being advised of the penalties for misrepresentation and fraud. Finally, the state alleges that the form signed by appellee in application for her food stamps contained the following warnings:

"1. I have read the foregoing application, or it has been read to me, and I certify that the information I have given is true, complete and correct.

\* \* \* \* \* \*

"4. I understand that failure to report the true facts on my financial status and living arrangements could lead to a fine, legal recovery action or imprisonment.

\* \* \* \* \* \*

"6. I know that I must notify the Food Stamp Office and report any change in the information shown anywhere in this application \* \* \*."

These warnings are apparently based, at least partially, on the following Departmental regulations:

"Households \* \* \* must \* \* \* provide the D.E.S. with enough information regarding household income and circumstances to make a determination of eligibility. \* \* \*. ACRR–R6–3–2005.

"A. Recipients are responsible for reporting the following changes:

"1. Changes in household circumstances required to be reported on the application, such as, but not limited to, changes in household composition, a new address, acquisition of new resources such as a lump sum payment, changes in work registration status.

"2. Changes in total monthly deductible expenses of more than $25.

"3. Changes in gross monthly income of more than $25." ACRR–R6–3–2303.

On June 21, 1977, an information was filed charging appellee in the language of A.R.S. § 13–1025(A)[1] with three counts of

---

1. The precise wording of A.R.S. § 13–1025(A) is "Whoever knowingly uses, transfers, acquires, or possesses or knowingly attempts to use, transfer, acquire, or possess food stamps or authorizations to purchase food stamps in any manner not authorized by law is guilty of a misdemeanor if the face value of the food stamps or the authorizations to purchase food stamps is one hundred dollars or less, or is guilty of a felony if the face value of the food stamps or the authorizations to purchase foods

stamps exceeds one hundred dollars \* \* \*". In *State v. Ortiz*, 115 Ariz. 43, 563 P.2d 298 (App., 1977) the only other Arizona appellate case to have discussed the statute, the Court of Appeals held that the defendant had acquired food stamps in a manner not authorized by law when she accepted food stamps over a period of time after having falsely certified to the Department of Economic Security that her husband was not contributing to her support.

having knowingly used, transferred, acquired or possessed food stamps of the face value of over $100.00, in any manner not authorized by law".

Appellee filed a motion to dismiss the information on August 16, 1977, arguing that the information failed to adequately advise her of the nature of the charges against her and that A.R.S. § 13–1025(A) is unconstitutionally vague. The trial judge, agreeing with the latter contention, granted the motion on September 8, 1977. The judge further held that the provision provides for an unconstitutional delegation of legislative authority to define criminal behavior to Congress, various federal agencies and the Arizona Department of Economic Security. We have taken jurisdiction of the state's appeal pursuant to Rule 47(e)(5) Supreme Court Rules.

Preliminarily, we agree with the trial judge that by use of the phrase, "in any manner not authorized by law," the Legislature intended to refer to any and all federal and state statutes, rules and regulations relating to the distribution of food stamps.

■ A statute is "void for vagueness" when it " 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute' ". *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972).

The problem normally encountered with a vague statute is that a term or phrase employed by the statute to describe behavior so inadequately characterizes the conduct intended to be proscribed, most persons cannot ascertain whether certain of their actions are included within the meaning of the phrase. Appellee does not allege that any particular rule or regulation of the Department fails to sufficiently describe the particular conduct intended to be regulated. Rather it is her position that the source of the statute's vagueness is that the phrase "in any manner not authorized by law" does not give the reader any guidance as to which of the myriad state and federal regulations he should refer in order to determine whether his actions are unlawful. In other words, it is not appellee's position that the word "law" is an inadequate term for describing behavior, but, rather, that locating the particular regulations that do specifically define the proscribed conduct is too demanding a research project for persons of "ordinary intelligence".

Appellee further contends the state and federal regulations governing the food stamp program are so prolix and subject to constant change that there is always some uncertainty as to which methods of obtaining food stamps are permitted.

We agree that there would perhaps be due process problems in a case where the prosecutor ferrets out a seldom used provision deep from the recesses of a byzantine regulatory scheme to apply to the actions of a completely unsuspecting defendant. However, it appears that in this case we are dealing with neither an obscure regulation nor an unsuspecting defendant.

■ It has been stated recently by the United States Supreme Court that, "It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand". *United States v. Powell*, 423 U.S. 87, 93, 96 S.Ct. 316, 319, 46 L.Ed.2d 228 (1975); *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975). When appellee's challenge is considered in light of the alleged facts of her case, we are of the opinion, assuming the state can prove the necessary facts at trial, that the application form adequately apprised appellee that her failure to report her changed employment status in 1972 was violative of the above stated regulations of the Department of Economic Security.

While we have serious doubts as to the adequacy of the information filed by the state in this case, appellee has not raised that issue on appeal and, consequently, it is

unnecessary to fully consider the issue at this time.[2]

We now turn to the trial judge's ruling that A.R.S. § 13–1025(A) provides for an unconstitutional delegation of legislative authority to create penal statutes. While we continue to be guided by the principle that the Legislature may not completely delegate its law making power to another governmental agency, we recognized in *State v. Arizona Mines Supply Co.*, 107 Ariz. 199, 484 P.2d 619 (1971) the increasing trend in the cases to uphold certain adequately circumscribed delegations of power. We stated,

> " * * * the decisions display an increasing tendency, due to the complexity of our social and industrial activities, to hold as nonlegislative the authority conferred upon commissions and boards to formulate rules and regulations and to determine the state of facts upon which the law intends to make its action depend.
>
>      *      *      *      *      *      *
>
> "Delegation of 'quasi-legislative' powers to administrative agencies, authorizing them to make rules and regulations, within proper standards fixed by the legislature, are normally sustained as valid, and, barring a total abdication of their legislative powers, there is no real constitutional prohibition against the delegation of a large measure of authority to an administrative agency for the administration of a statute enacted pursuant to a state's police power. And the standards which must accompany such grant of legislative power need not necessarily be set forth in express terms if they might rea-

sonably be inferred from the statutory scheme as a whole." *Id.* 107 Ariz. at 205, 484 P.2d at 625.

It should be noted that A.R.S. § 13–1025(A) does not delegate any power whatsoever in the sense of authorizing another governmental body to create rules or regulations. Rather, the section merely incorporates into the criminal law of Arizona, by the process of providing penalties for their violation, rules and regulations of various governmental agencies, which rules the agencies involved are authorized to promulgate by sources of power unrelated to § 13–1025(A). For instance, Congress' power to create the Food Stamp Act is derived from the United States Constitution, and the federal agencies' rule making powers are derived exclusively from Congress. The Department of Economic Security's power to make rules and regulations for the administration of the food stamps program comes from A.R.S. § 46–134(12).[3]

As to whether the Legislature's effort to create criminal law by the process of incorporation is unconstitutional, we turn first to the statute's attempt to incorporate statutes and rules created by federal bodies.

▮ It is perfectly legitimate for the Legislature to adopt existing federal rules, regulations or statutes as the law of this state. *State v. Urquhart*, 50 Wash.2d 131, 310 P.2d 261 (1957); *Brock v. Superior Court*, 9 Cal.2d 291, 71 P.2d 209 (1937). The rationale of course, is that, assuming the Legislature has the power to act in a certain area, it should not be required to set out in full that which can be incorporated by a single citation. However, it is universally held that an incorporation by state

---

2. A well articulated standard for testing the sufficiency of an information is set forth in *State v. Suarez*, 106 Ariz. 62, 64, 470 P.2d 675, 677 (1970): "An information is legally sufficient if it fairly indicates the crime charged; states the essential elements of the alleged crime; and is sufficiently definite to apprise the defendant so that he can prepare his defense to the charge." In that the information failed to apprise appellee of which of the potentially hundreds of regulations the state intended to prove violations of at trial, we think that the information fell well short of the standard.

3. A.R.S. § 46–134(12) authorizes the Department to "Make rules and regulations, and take action necessary or desirable to carry out the provisions of this title * * *." Since the Department's powers in the area of food stamp distribution are limited to regulations only for the *administration* of the program, and, further, only to those that are "necessary or desirable", the delegation is proper. *State v. Arizona Mines Supply Co., supra.*

statute of rules, regulations, and statutes of federal bodies to be promulgated subsequent to the enactment of the state statute constitutes an unlawful delegation of legislative power. *Brock v. Superior Court, supra; Dawson v. Hamilton*, 314 S.W.2d 532 (Ky., 1958); *State v. Urquhart, supra*, and cases cited therein. Since the Legislature exercises absolutely no control over Congress or its agencies, the adoption as state law of those bodies' prospective enactments is viewed as a complete abdication of legislative power.

The reasoning expressed in these decisions, however, does not carry over to rules and regulations promulgated by state agencies. Apparently on the theory that the Legislature exercises complete dominion over its own agencies, it has long been established that the Legislature is empowered to provide criminal sanctions for violations of any legitimate rule or regulation, including prospective enactments, that it has otherwise authorized the agency to promulgate. *State v. Anklam*, 43 Ariz. 362, 31 P.2d 888 (1934); *State v. Phelps*, 12 Ariz.App. 83, 467 P.2d 923 (1970). Hence, while any reference to future pronouncements of federal law alluded to by § 13–1025(A) constitutes an unconstitutional delegation, that statute's incorporation of both present and future regulations of the Department of Economic Security into the criminal law of the state is a legitimate exercise of legislative power.

Since the reference in the statute to federal law is not so completely intertwined with the reference to state rules and regulations to raise the presumption that the Legislature would not have enacted a statute incorporating the regulations of the Department of Economic Security without the accompanying incorporation of federal law, we think that the valid and invalid portions of the act are severable and that the statute's constitutionally legitimate provisions remain viable. *State ex rel. Berger v. Superior Court*, 106 Ariz. 365, 476 P.2d 666 (1970); *McCune v. City of Phoenix*, 83 Ariz. 98, 317 P.2d 537 (1957).

In conclusion, if the state intends to support a charge of criminal activity under § 13–1025(A) with proof of violations of federal statutes or regulations, it may rely only on laws and regulations in existence prior to the enactment of A.R.S. § 13–1025(A). However, the prosecutor may support criminal charges under A.R.S. § 13–1025(A) with proof of violations of regulations of the state Department of Economic Security that were promulgated both prior and subsequent to the passage of A.R.S. § 13–1025(A). The order of the Superior Court dismissing the information is reversed. The case is remanded to the Superior Court for further proceedings not inconsistent with this opinion.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and HOLOHAN, JJ., concurring.