UTAH LEAGUE OF INSURED
SAVINGS ASSOCIATIONS, et
al., Plaintiffs,

v.

STATE OF UTAH; Scott M. Matheson,
Governor of the State of Utah, et
al., Defendants.

Civ. No. C–81–0664W.

United States District Court,
D. Utah, C.D.

Jan. 3, 1983.

On Motions to Alter or Amend Decision
Jan. 17, 1983.

Richard W. Giauque, Stephen T. Hard, Salt Lake City, Utah, for plaintiffs.

Craig L. Barlow, Asst. Atty. Gen., Salt Lake City, Utah, for defendants.

David R. Olsen, Carl F. Huefner, Steven E. Tyler, Salt Lake City, Utah, for amicus Utah Assoc. of Realtors in support of defendant.

WINDER, District Judge.

Plaintiffs' motion for a declaratory judgment and defendants' motion for summary judgment were orally argued on September 2, 1982. Plaintiffs were represented by Richard W. Giauque and Stephen T. Hard, and defendants were represented by Craig L. Barlow. David R. Olsen and Steven Tyler represented Amicus Utah Association of Realtors in support of defendants. Following the hearing, the court took the matter under advisement and has since reviewed the memoranda of counsel, pertinent cited authorities and legislative history. Based on the foregoing, the court renders the following decision.

Plaintiffs seek a declaratory judgment that the Due-on-Sale Act, Utah Code Annotated sections 57–15–1 to 10 (1981 Supp.) is unconstitutional. Defendants, conversely, move for an order denying plaintiffs' motion for declaratory judgment and a declaration that the Due-on-Sale Act is constitutional.[1]

---

1. Recently the United States Congress passed S.2879 which was signed into law October 15, 1982. *See* Garn-St. Germain Depository Institutions Act of 1982, Public Law 97–320. Its provisions directly conflict with the enforcement of the Utah Due-on-Sale Act. *See* § 341(b) which provides: "Notwithstanding any provision of the Constitution or laws (in-

Plaintiff Utah League of Insured Savings Associations is an association of federal and state-chartered savings and loan associations with offices in the State of Utah. On August 5, 1982, this court granted a declaratory judgment with respect to the federal plaintiffs in the case. The remaining plaintiffs are Utah State-chartered savings and loan associations. Collectively, they have over 32,000 outstanding security interests which secure loans on real estate with four or fewer residential dwelling units. The majority of those security interests were executed prior to May 12, 1981, the effective date of the Due-on-Sale Act. Many of the security interests which are used by the plaintiffs contain a "due-on-sale clause," which provides in part that:

> If all or any part of the property or an interest therein is sold or transferred by Borrower without Lenders' prior written consent, . . . Lender may, at Lender's option declare all the sums secured by this Deed of Trust to be immediately due and payable. Lender shall have waived such option to accelerate if, prior to the sale or transfer, Lender and the person to whom the Property is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sum secured by this Deed of Trust shall be at such rate as Lender shall request.

The Due-on-Sale Act, sections 57–15–1 *et seq.*, prohibits lenders subject to the Act from enforcing due-on-sale clauses contained in security interests originated either before or after May 12, 1981, except under the circumstances provided in sections 57–15–2 (where the transfer or sale of the real estate would substantially impair the lender's prospect of prompt and full payment); 57–15–7 (if lender's security interest is sub-

stantially impaired); 57–15–8 (if written notice of a request for an assumption is not timely made before a transfer or within 90 days after transfer, the lender may call the entire loan balance due without a determination the security interest is substantially impaired); and 57–15–8.5 (assumer has refused to consent to statutorily provided assumption fee and interest rate increases).

The Due-on-Sale Act does not apply to security interests in real estate originated by entities established pursuant to the Utah Housing Finance Agency Act, section 63–44a–1 *et seq.*, Utah Code Ann.; by public agencies making noninterest or low interest loans; or by private nonprofit corporations making noninterest or low interest loans for the rehabilitation of existing residential structures. The Due-on-Sale Act also does not apply to any person with a security interest in real estate who is not regularly engaged in the business of making real estate loans. *See* section 57–15–6, Utah Code Ann.

Members of the Utah League of Insured Savings and Loan Associations have experienced two general categories of property transfers where the League members' ability to enforce the Due-on-Sale provisions has been impaired by the Due-on-Sale Act. In the first category, a number of borrowers from the League members transferred interest in property subject to due-on-sale clauses without obtaining the League members' written consents to those transfers. Additionally, a number of transferees of those properties have not submitted credit applications to the League members and have not agreed to increases in the interest rate on the remaining indebtedness, even though the transferee had actual or constructive notice that such was required by the security interests.

cluding the judicial decisions) of any State to the contrary, a lender may, subject to subsection (c), enter into or enforce a contract containing a due-on-sale clause with respect to a real property loan." Subsection (c) would create a three-year window for persons relying on a law or judicial decision restricting the enforcing of due-on-sale clauses. This court assumes Congress intended the State law referred to in

Subsection (c) to be valid, thus the necessity of proceeding with the determination in this present case. The committee report appears to support this conclusion. *See Comm. Report on S.2879,* S.Rep. No. 97–536, 97th Cong. 2d Sess. 1 (1982), p. 22, n. 2, 3 U.S.Code Cong. & Admin.News 1982, p. 3054 which appear to indicate an expectation of validity.

In the second category, after the enactment of the Due-on-Sale Act, a number of borrowers from the League members transferred interest in property subject to due-on-sale clauses, wherein the League members were notified of the transfers and the transferees of the property agreed to assume the borrower's obligations to the League members. In assuming those obligations, the transferees agreed to pay assumption fees of one percent and agreed that the interest rates on the remaining indebtedness would be increased immediately by one percent per annum and further would be increased by one percent per annum five years after the date of assumption. League members have agreed to these particular increases in the interest rate only because of the provision of the Due-on-Sale Act section 57–15–8.5, which limits the amount interest rates can be increased in connection with assumptions of existing loans. Otherwise, the outstanding security interests containing due-on-sale clauses allow the League members to raise the interest rates above the limit set forth in section 57–15–8.5.

It is stipulated that in the absence of the Due-on-Sale Act, the League members would seek to enforce due-on-sale clauses contained in their security interests other than and in addition to those limited conditions set forth in sections 57–15–2, –7, –8, and –8.5. It is also stipulated that the passage and application of the Due-on-Sale Act, particularly the retroactive application thereof, has had, and will continue to have, an effect on plaintiffs.

In addition to the adoption of the Due-on-Sale Act during the 1981 General Session of the Utah Legislature, the Savings and Loan Associations Act, sections 7–7–1 to –44, Utah Code Ann. (1981 Supp.) was also passed and signed into law.

Plaintiffs contend the Due-on-Sale Act is unconstitutional in that it retroactively impairs contracts, violates equal protection and denies due process. They alternatively argue that even if the Act withstands these constitutional challenges, it is superseded by provisions within the Savings and Loan Associations Act.

*Impairment of Contracts*

Plaintiffs contend section 57–15–2, Utah Code Ann., which gives retroactive effect to the Act, violates Contract Clauses in the United States and Utah Constitutions. The Act declares that "[any due-on-sale clause] in an instrument in existence before or after the effective date of this Act representing a security interest in real estate is unenforceable as an unreasonable restraint on alienation ...." Section 57–15–2, Utah Code Ann. Article I, Section 10, of the Constitution of the United States, provides in part that "[n]o state shall ... pass any ... law impairing the obligation of contracts." Similarly, the Constitution of the State of Utah, Article I, Section 18, requires that "[no] ... law impairing the obligation of contracts shall be passed."

 It is clear these prohibitions in the United States and Utah Constitutions are not absolute; they do not operate to obliterate the police power of the State of Utah. *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 240–42, 98 S.Ct. 2716, 2720, 57 L.Ed.2d 727 (1978); *Home Building & Loan Association v. Blaisdell,* 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934). Constitutional analysis under the Utah Contract Clause appears to be essentially the same as analysis under the United States Constitution. *Kent Club v. Toronto,* 6 Utah 2d 67, 76, 305 P.2d 870, 876 (1957); *Fower v. Provo Bench Canal & Irrigation Co.,* 99 Utah 267, 101 P.2d 375 (1940). There are limits, however, upon the power of a state to abridge existing contractual relationships. The Supreme Court in *Spannaus* indicated the existence and nature of those limits by citing a series of cases arising from the efforts of the states to deal with emergencies brought on by the depression in the early 1930's, and a recent case, *United States Trust Co. v. New Jersey,* 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977). From these cases and from the Court's analysis in *Spannaus,* it appears to this court that there is a two-step approach in determining the constitutionality of a statute under the Contract Clause. First, has the state law in question

substantially impaired a contractual relationship. If so, does the legislation use reasonable means to accomplish a proper public purpose.

■ To this court the impairment of the contracts entered into by the plaintiffs is obvious. The state had not previously regulated the use of due-on-sale clauses in mortgages, and plaintiffs were justified in including them in many of their contracts. With the enactment of the Due-on-Sale Act there is a restriction of plaintiffs' contractual rights to declare all sums secured due and payable upon sale or transfer of the property or to set a new rate of interest for the assumer of the property. There is no doubt the legislature intended to and did impair certain contracts, but whether the impairment is substantial is doubtful.

To determine whether an impairment is substantial, both parties agree the purpose of the due-on-sale clause must be considered against the effect of the legislative enactment. Three reasons for the clause are advanced: (1) To enable the savings and loan associations to upgrade their loan portfolios when the property is turned over, (2) to facilitate the sale of the security instruments on the secondary market, and (3) to protect the security. Both parties strongly contest which purpose should be considered the primary reason for inclusion of a due-on-sale clause. The legislature apparently considered all three reasons as valid and adjusted the provisions of the Act accordingly. When there has been an assumption, the legislature provided that a lender may assess an assumption fee and modestly raise the interest on the loan. See section 57–15–8.5. The legislature also made certain the Act would not adversely affect the sale of mortgages on the secondary market by providing that:

> If a determination is made by the Federal National Mortgage Association or by the Federal Home Loan Corporation that it will not purchase Utah mortgage loans because of the effects of this Act, and such determination is communicated in writing to the legislature or governor of this state, then this Act will not apply,

after receipt of such communication to any mortgages originated after the effective date of this Act and sold to the entity making such determination.

*Id.* The legislature was not as concerned that the retroactive nature of the Act would severely impact on secondary mortgage market purchases, because it was a general legislative impression that the major purchasers in the secondary market, the Federal National Mortgage Association and the Federal Home Loan Corporation, would not enforce due-on-sale clauses in previously executed loans. Finally, the Act adequately provides for this historical purpose of due-on-sale clauses, the protection of the lender's security. See sections 57–15–2, –3, –7, and –8.5.

This court is convinced the statute does impair contractual obligations, but it is questionable whether the impairment is substantial. Certain legislative provisions temper the harsh impact of the Act. Even if it were substantial, this court feels the Act is not an unconstitutional impairment. The touchstone is reasonableness. "Legislation adjusting the rights and responsibilities of contracting parties must be upon reasonable conditions and of a character appropriate to the public purpose justifying its adoption." *Allied Structural Steel Co. v. Spannaus,* 438 U.S. at 244, 98 S.Ct. at 2722 citing *United States Trust Co. v. New Jersey,* 431 U.S. at 22, 97 S.Ct. at 1517. To demonstrate that the Act is an unreasonable exercise of the state's police power, plaintiffs rely heavily on five limitations suggested in *Home Building & Loan Association v. Blaisdell,* 290 U.S. 398, 444–47, 54 S.Ct. 231, 242, 78 L.Ed. 413 (1934), and referred to in *Spannaus,* 438 U.S. at 242, 98 S.Ct. at 2721. The legislation examined in *Blaisdell* was adopted pursuant to an emergency and was strictly limited in duration. The five factors enumerated in *Blaisdell,* however, are not absolute limitations for gauging the legislation's constitutionality under the Contract Clause. As the Supreme Court indicated, "*Blaisdell* suggested further limitations that have since been subsumed in the overall determination of

reasonableness. . . . Later decisions abandoned these limitations as absolute requirements." *United States Trust Co. of New York v. New Jersey,* 431 U.S. at 22, n. 19, 97 S.Ct. at 1518, n. 19.

Has the legislature through the Due-on-Sale Act used reasonable means to accomplish a proper public purpose? It is this court's judgment that a legitimate governmental interest justifies the impairment.

The Utah Legislature specifically found that a due-on-sale clause is an unreasonable restraint on alienation when used by a lender for a purpose other than to protect a security interest. Sections 57–15–1, 2 and 3. After reviewing the information and arguments presented before the Utah House and the Senate it is evident the legislature was convinced, in light of high inflation in a stagnant real estate market, that the harms to Utah economic conditions would be favorably alleviated by tempering the enforcement of due-on-sale clauses. The provisions of the Act are aimed at promoting the alienability of property which was anticipated by the legislature to generate additional capital for the purpose of existing and new construction. The Act's purpose and design, then, was to stimulate Utah economy and promote the general welfare of the state. This court is of the opinion that the legislative means used were reasonable in light of the Act's purpose.

*Equal Protection*

The Equal Protection Clause of the Fourteenth Amendment provides that: "No state shall make or enforce any law which shall … deny to any person within its jurisdiction equal protection of the laws." U.S. Const.Amend. XIV, section 1. Plaintiffs maintain the Due-on-Sale Act has three deficiencies which deny them equal protection: first, making irrational and unreasonable distinctions between plaintiffs,

who are limited in their enforcement of due-on-sale clauses, and persons and entities who can or may be able to enforce them; second, treating state-chartered institutions and federally-chartered institutions differently; and third, providing different treatment for lenders who secure their loans with a mortgage and those who use trust deeds as a security instrument.

■ The Equal Protection Clause, like the Contract Clause, is not an absolute prohibition against a state treating different classes of persons in different ways. The Equal Protection Clause does require, though, that classifications drawn in a statute must be reasonable, not arbitrary, and bear a rational relationship to the object of the legislation. *Reed v. Reed,* 404 U.S. 71, 75–76, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971).

■ Plaintiffs contend section 57–15–6[2] makes an improper classification. The section allows enforcement of due-on-sale clauses by some state agencies, public and private agencies making noninterest and low interest loans, and persons not regularly engaged in the business of making real estate loans. Since the purpose of the Act is to limit the enforcement of due-on-sale clauses because the legislature found them, in certain circumstances to be an unreasonable restraint upon alienation, plaintiffs reason that *all* persons and entities should be restricted from using due-on-sale clauses. Where the Act provides exceptions, plaintiffs contend the Equal Protection Clause is violated. The court finds the plaintiffs' argument unpersuasive.

The legislative policy behind the exemptions in section 57–15–6 are adequate to constitutionally sustain the differing treatment. The exempted public and private agencies are not doing business to make a profit. The public agencies are also re-

**2.** Section 57–15–6 provides that:
This chapter shall not be applicable to security interests in real estate originated by, or for purchase by any entity established pursuant to Chapter 44A, Title 63 or by public agencies making noninterest and/or low interest loans and noninterest and/or low interest loans

made by private nonprofit corporations for the rehabilitation of existing residential structures.
This chapter shall not be applicable to a person with a security interest in real estate who is not regularly engaged in the business of making real estate loans.

stricted in their ability to invest funds and make loans. *See* section 63–44a–1 *et seq.*

Most of the borrowers who obtain money from the public and nonprofit entities would have difficulty obtaining loans elsewhere. In these situations, enforcement of the due-on-sale clause would enable the lending entities to maintain control of their limited funds and make certain their continued use is for the proper purpose.

The exemption for noninstitutional lenders under section 57–15–6 who are not typically in the market is likewise reasonable. As the resources of these lenders are much more limited than plaintiffs, the significance of an individual piece of property to secure a loan is greatly enhanced. This exemption and the other exemptions within section 57–15–6 are rationally related to valid state interests.

Plaintiffs' next Equal Protection attack arises from the Supreme Court's decision in *Fidelity Federal Savings & Loan Association v. de la Cuesta,* ––– U.S. –––, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). Plaintiffs maintain there is no justifiable reason why state savings and loan associations cannot enforce due-on-sale clauses when federally chartered associations can. The short answer is that *de la Cuesta* and not the Utah Legislature finalized differences between the federal and state savings and loan associations. When the Due-on-Sale Act was being debated, the legislature was uncertain whether the federal savings and loan associations were governed by Utah law. It was not until after the Supreme Court decided *de la Cuesta* that differences between the institutions were clear. The plaintiffs' claim of a competitive disadvantage would be more properly addressed to the legislature. *Usury v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976).

■ Beyond that, state law may be constitutionally flawed only if it lacks a rational basis for treating unequally persons who are similarly situated. Where the federal savings and loan associations are governed by federal laws which support federal objectives, and the state savings

and loan associations are governed by state laws which are enacted to further state purposes, this court is unable to conclude the resulting difference in treatment is a classification lacking in rational justification. *Flemming v. Nestor,* 363 U.S. 603, 611, 80 S.Ct. 1367, 1372, 4 L.Ed.2d 1435 (1960). *See also, Lyons Savings & Association v. Federal Home Loan Bank Board,* 377 F.Supp. 11, 20 (N.D.Ill.1974).

■ The plaintiffs' third Equal Protection Claim arises from the language of section 57–15–8.5 which appears to make a distinction between mortgages and trust deeds. Throughout the Act general references are made to a lender's "security interest," which would incorporate trust deeds and mortgages, but section 57–15–8.5 only refers to mortgages. *See* n. 2 *supra.* Plaintiffs assert no rational basis exists for making a distinction between those persons or entities, including plaintiffs, who primarily use trust deeds as security instruments and those persons and entities who use mortgages as security instruments.

The legislative history of the Act resolves the problem. The disputed clause was an amendment which used "mortgage" as a general term and was meant to include mortgages and trust deeds. This construction is consistent with the definitions of mortgage found throughout the Utah Code Annotated. Each reference would include "trust deeds" within the definition of "mortgage." *See* Utah Code Annotated Sections 11–17–2(4); 11–29–2(9); 63–9a–3(5); 63–44a–3(8); 75–1–201(25). *See also Baker v. Taggert,* 628 P.2d 1283 (Utah 1981); *W.M. Barnes Company v. Sohio Natural Resources Company,* 627 P.2d 56 (Utah 1981); *Brown v. Skeen,* 58 P.2d 24, 32 (Utah 1936); *Dupee v. Rose,* 10 Utah 305, 308, 37 P. 567 (1894). As defined, the use of the term "mortgage" does not present a constitutional issue.

*Due Process*

■ Plaintiffs' final constitutional challenge is that, as applied, section 57–15–8.5 violates the Due Process Clause of the Fourteenth Amendment because it is so

vague that persons of common intelligence must necessarily guess at its meaning and differ as to it application. Section 57–15–8.5 allows a lender under certain conditions to accelerate a loan balance on an assumption if the security instrument contains a due-on-sale clause and if the assumer fails to:

Agree to pay the secured party or a lender not more than a one percent assumption fee, a not more than one percent interest rate increase effective as of the date of assumption, *whichever is earlier,* and a further not more than one percent interest rate increase effective a date five years after the date of assumption, *whichever is earlier.*

Section 57–15–8.5, Utah Code Ann. (emphasis added).

The section as it now reads is difficult to understand, because there are no two points in time listed in the statute to which the phrase "whichever is earlier" can relate. Even so, it is doubtful persons of common intelligence must necessarily guess at its meaning and differ as to its application. The meaning of section 57–15–8.5 and the reason for the inclusion of "whichever is earlier" can be clarified by reviewing amendments to Substitute House Bill 203 in the State Senate of Utah, as recorded in the Senate Journal of the 44th Legislative General Session (1981), pp. 932, 941. In the process of amending section 57–15–8.5,

there was a failure to delete "whichever is earlier." After an amendment and a subsequent amendment to the section, the now meaningless phrase was inadvertently left in the bill's text when it should have been deleted. Even so, this court feels the intent of the legislature is readily apparent and section 57–15–8.5 is sufficiently clear to withstand a "void for vagueness" attack. The obvious intent of this section is that the increased interest rates should be effective as of the date of the assumption.

■ Finally, plaintiffs insist even if the Due-on-Sale Act is constitutional it is superseded by the Savings and Loan Act, sections 7–7–1 *et seq.,* Utah Code Ann. (1981 Supp.), enacted by the 1981 legislature. The Savings and Loan Association Act concludes with the directive that:

Insofar as the provisions of this chapter are inconsistent with the provisions of any other state law affecting associations, existing as of the effective date of this Act, the provisions of this chapter shall control.

Section 7–7–44, Utah Code Ann. (1981 Supp.).

Section 7–7–33,[3] which specifically allows savings and loan associations to invest in or otherwise acquire loans "callable upon transfer of the security," and section 7–7–41[4] indicate, according to the plaintiffs,

---

**3.** Section 7–7–33 does not give savings and loan associations the right to *enforce* Due on Sale Clauses. Subsection (1) only provides that: "An association may *invest in* or otherwise *acquire* loans callable upon transfer of the security." (Emphasis added.)

**4.** Section 7–7–41 states:

Notwithstanding any provision of law to the contrary, any association organized under the laws of this state, which is a member of the federal home loan bank system and whose accounts are insured by the federal government or an instrumentality of the federal government, shall have, in addition to all rights, powers, privileges, benefits and immunities presently possessed all additional rights, powers, privileges, benefits and immunities possessed, as of the effective date of this Act, by, as well as all additional rights, powers, privileges, benefits and immunities thereafter granted to federal associations the

home offices of which are located in this state, unless and until the commissioner shall by rule disapprove of the additional right, power, privilege, benefit or immunity thus acquired. The commissioner shall disapprove any such additional right, power, privilege, benefit or immunity which, in his discretion, he finds to be (1) not in the public interest, (2) contrary to the public policy of this state, or (3) tending to decrease competition or to create a monopoly, unless its anticompetitive effects are clearly out-weighed by its probable effects in meeting the needs of the public. Any rule disapproving any additional right, power, privilege, benefit or immunity acquired under this section shall be adopted in accordance with the provisions of the Utah Administrative Rule-Making Act. It is the intent and desire of the legislature, in allowing the acquisition of additional rights, powers, privileges, benefits and immunities by the associations of the state, to avoid

that the Utah Legislature exempted state savings and loan associations from the Due-on-Sale Act. Since the Savings and Loan Association Act became effective July 1, 1981, which was after the effective date of the Due-on-Sale Act, May 12, 1981, plaintiffs contend the Savings and Loan Association Act is controlling and supersedes any conflicting provisions of the Due-on-Sale Act.

In view of the clear directive contained in section 7–7–44, this court is persuaded that the legislature intended the Savings and Loan Association Act to control over previously enacted, inconsistent provisions of any other state law affecting savings and loan associations. This being so, section 7–7–41, if valid, would grant savings and loan associations the right to enforce due-on-sale clauses since *de la Cuesta* confirmed that federal savings and loan associations are governed by regulations of the Home Loan Bank Board which presently allow enforcement of due-on-sale clauses. Defendants, however, declare that section 7–7–41 is unconstitutional as an unlawful delegation of legislative authority. Section 7–7–41 would allow state savings and loan associations to exercise and acquire any right or privilege that federal savings and loan associations acquire. Any applicable federal laws would become instantly effective and would only be "repealed" if the Utah Commissioner of Financial Institutions were to disapprove of any such additional rights, powers, privileges, benefits or immunities which, in his discretion, he found to not be in the public interest, contrary to the public policy of the State of Utah, or tending to decrease competition or create a monopoly.

Though plaintiffs have sought a declaration, in part, that the Due-on-Sale Act is invalid and unenforceable because it has been superseded by the Savings and Loan Association Act, plaintiffs ask this court not to determine the constitutionality of section 7–7–41 because they claim it would be a hypothetical determination. Plaintiffs ap-

pear to concede that a prospective adoption of federal laws or regulations through section 7–7–41 would be an unconstitutional delegation of legislative power. They stress, however, that section 7–7–41 has not been prospectively invoked because, as *de la Cuesta* confirmed, the federal law allowing enforcement of due-on-sale clauses has been in effect as early as 1976. Furthermore, they argue the Utah Legislature has simply adopted the existing law of another jurisdiction, making it unnecessary to consider defendants' argument that the prospective application of section 7–7–41 would be unconstitutional.

Despite plaintiffs' arguments, this court is of the opinion that any legislative act granting to state savings and loan associations the right to enforce due-on-sale clauses after the Due-on-Sale Act was effective must have been by prospective adoption of federal savings and loan associations rights. There is little doubt in view of the extensive nature of the Savings and Loan Associations Act that the legislature could have specifically given state-chartered savings and loan associations the right to enforce due-on-sale clauses—but they did not. Instead, plaintiffs argue, that right was given to state savings and loan associations through the language of section 7–7–41, which provides that state-chartered savings and loan associations "shall have . . . all additional rights possessed as of the effective date of this Act, by . . . federal associations." The question is, what additional rights would be possessed by federal associations as of the effective date of the Act, July 1, 1981. Certainly, one law that could have affected the federal savings and loan association's rights and powers on July 1, 1981 was the Due-on-Sale Act, which was effective May 12, 1981. It is clear from reading the legislative history to the Due-on-Sale Act that the legislature was uncertain as to the effect the Act would have on the federal savings and loan associations

competitive inequalities between federal associations and associations organized under the laws of Utah, and this section shall be

broadly construed in order to give effect to this intent.

located within the state of Utah.[5] The Utah Legislature recognized the law was not settled as to whether state law could or would affect a federal savings and loan association's ability to enforce a due-on-sale clause. Since it was not settled, and could only be by a Supreme Court decision (which came with the *de la Cuesta* decision on June 28, 1982), the legislature effectively abdicated its power to grant state savings and loan associations the right to enforce due-on-sale clauses subject to a future determination of the question whether federal savings and loan associations were subject to control by state laws. By effecting a prospective adoption of federal savings and loan association's rights, the question of section 7–7–41's constitutionality is not hypothetical.

As referred to above, *see* n. 4 *supra* and accompanying text, section 7–7–41 in effect grants to federal entities the power to make law for the State of Utah. As the section reads, no action by any state official or entity is required for these new rights, powers, privileges, benefits and immunities to be effective; they are operational solely by federal action. The broad provisions of section 7–7–41 grant to the federal government the power to make law for the State of Utah.

The constitutionality of conveying this state legislative power to Congress or other federal entities has not been specifically decided in Utah, though the question has been determined in other states.[6] Even so,

5. Several excerpts from the transcription of discussion of House Bill 203 in the Utah Senate indicate the confusion:

Pugh, p. 35:
Well, I've been told that we do not have jurisdiction over the *national* savings and loans. Now we get differing opinions from different people. (Emphasis in transcription.)

Jeffs, p. 47:
I point out as Senator Bullen has, that the effect of this, according to the FNMA letters we've all received, will not affect those five large, federally-chartered institutions, but only the ten small savings and loans who will have things dry up on them. I think you ought to understand the effect of the inequality we're going to be doing if you don't leave those amendments in.

Cornaby, p. 48:
Now let me make one additional statement. I don't know how many of you people in receiving calls from constituents have bothered to ask how many of them have their loans with state vs. federally-chartered institutions. I've done that, and I can report to you that 75% of the calls which I have received on [House Bill] 203 came from constituents and others who had loans with federally-chartered institutions. Not one of those individuals realized that this Bill would not touch their loan situation. They had been misled.... I think you ought to ... tell them that the federally-chartered institutions are not involved and their loans will not come under this.

Sowards, p. 49:
Senator Cornaby, I should start practicing law with you, as a fellow turkey, I feel you are equal, but in the law probably not. But the fact remains that this has not been decided by the courts. There is a split in the decision of the courts so the federal savings

and loan associations are subject to the limitations of H.B. 203, so I wouldn't want this body to think that there is a clear cut decision on this. There is not, and it's still very mixed in the decisions of federal courts.

6. *See Wallace v. Commissioner of Taxation,* 289 Minn. 220, 184 N.W.2d 588, 591 (1981); *State v. Williams,* 119 Ariz. 595, 598, 583 P.2d 251, 254–55 (1978); *State v. Dougall,* 89 Wash.2d 118, 122, 570 P.2d 135, 138 (1977). The Arizona Supreme Court in *Williams* summarized the state of the law in this area:

It is perfectly legitimate for the Legislature to adopt existing federal rules, regulations or statutes as the law of this state. The rationale of course, is that, assuming the Legislature has the power to act in a certain area, it should not be required to set out in full that which can be incorporated by a single citation. However, it is universally held that an incorporation by state statute of rules, regulations, and statutes of federal bodies to be promulgated subsequent to the enactment of the state statute constitutes an unlawful delegation of legislative power. Since the Legislature exercises absolutely no control over Congress or its agencies, the adoption as state law of those bodies' prospective enactments is viewed as a complete abdication of legislative power.

119 Ariz. at 598, 583 P.2d at 254 (citations omitted).

In *Dougall,* the Washington Supreme Court while reviewing a delegation of authority against constitutional provisions similar to those in the Utah Constitution concluded:

While the legislature may enact statutes which adopt *existing* federal rules, regulations, or statutes, legislation which attempts to adopt or acquiesce in *future* rules, regulations or statutes is an unconstitutional delegation of legislative power and thus void.

it appears Utah law would support the same conclusion. As early as 1932 the Utah Supreme Court in *State v. Goss,* 79 Utah 559, 11 P.2d 340, 341–42 (Utah 1932), delineated the constitutional problem:

> The legislative power of the state is by the Constitution vested in the Legislature, and, under circumstances therein specified, in the people of the state, and such legislative power may not by the Legislature be delegated to other agencies, except as expressly directed or permitted by the Constitution. Where, however, a certain policy has been prescribed by statute, the power to make rules and regulations to carry such policy into effect may be conferred upon or delegated to an administrative agent such as a board or commission.

Quoting from *State v. Chicago, Milwaukee and St. P. Ry. Co.,* 38 Minn. 281, 37 N.W. 782, 787, the court pointed out:

> The difference between the power to say what the law shall be, and the power to adopt rules and regulations, or to investigate and determine the facts, in order to carry into effect a law already passed, is apparent. The true distinction is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and the conferring and authority or discretion to be exercised under and in pursuance of the law.

Recent Utah Supreme Court cases would adhere to *Goss'* conclusion. In *IML Freight, Inc. v. Ottosen,* 538 P.2d 296 (Utah 1975), the Utah Supreme Court cited with approval the language in *New Mexico ex rel. McCullouch v. Ashby,* 73 N.M. 267, 387 P.2d 588 (1963) that:

> It is well [settled] that the legislature may not delegate authority to a board or commission to adopt rules or regulations which abridge, enlarge, extend or modify the statute creating the right or imposing the duty.

*Salt Lake City v. International Association of Firefighters,* 563 P.2d 786, 790 (Utah 1977), concludes similarly that Article I,

89 Wash.2d at 122, 570 P.2d at 138.

Section 2 and Article VI, Section 1 of the Utah Constitution would be violated if the legislature surrendered its legislative authority to another decision-making body.

As the Utah Legislature has no power to prescribe how powers under section 7–7–41 should be given or controlled, this court concludes that section 7–7–41 violates Articles I and VI as being an unconstitutional delegation of legislative authority. The Utah Legislature cannot delegate to the federal government its constitutional duty to make laws for the State of Utah. Thus, section 7–7–41 is hereby declared null and void insofar as it is purported to supersede sections 57–15–1 to –10.

Accordingly, plaintiffs' motion for a declaratory judgment is denied and defendants' motion for summary judgment is granted. This court declares the Due-on-Sale Act, sections 57–15–1 to –10 valid and constitutional.

## ORDER DENYING PLAINTIFFS' MOTIONS TO ALTER OR AMEND MEMORANDUM DECISION AND ORDER AND FOR AN EXPEDITED HEARING

### On Motions To Alter or Amend Decision

On January 13, 1983, plaintiffs filed a motion to alter or amend this court's January 3, 1983 Memorandum Decision and Order and have requested an expedited hearing on their motion. The court has read plaintiffs' memorandum and the supporting affidavit of Elaine B. Weis, Commissioner of the Department of Financial Institutions for the State of Utah. No further hearing is deemed necessary, although the court offers the following comments on its earlier decision.

Plaintiffs are concerned that certain language in this court's January 3, 1983 Memorandum Decision and Order is overly broad and may have substantial adverse impacts not anticipated by the court or the parties. The paragraph cited by plaintiffs states:

As the Utah Legislature has no power to prescribe how powers under section 7–7–41 should be given or controlled, this court concludes that section 7–7–41 violates Articles I and VI as being an unconstitutional delegation of legislative authority. The Utah Legislature cannot delegate to the federal government its constitutional duty to make laws for the State of Utah. Thus, section 7–7–41 is hereby declared null and void insofar as it is purported to supersede sections 57–15–1 to –10.

The court emphasizes that the scope of its January 3, 1983 Memorandum Decision and Order is not to be extended beyond the circumstances of the particular case decided. Even the above quoted paragraph, which concerns the plaintiffs, cannot be construed to have the far reaching effect suggested by plaintiffs, if considered in context with the more than eight pages immediately preceding it. Further, and even if read out of context, the extent of this court's holding regarding section 7–7–41 is specifically qualified and limited by the last sentence of the paragraph wherein it states:

> [S]ection 7–7–41 is hereby declared null and void *insofar* as it is purported to supersede sections 57–15–1 to –10.

Memorandum Decision and Order at 27 (emphasis added).

This court recognized that the Utah Legislature can adopt existing laws, but it cannot constitutionally abdicate its authority by prospectively adopting federal statutes or regulations. No ruling has been made on the validity of statutes other than sections 57–15–1 to –10 and 7–7–41, or as to what the validity of section 7–7–41 might be as applied in other situations. Other statutes, regulations and situations were not before the court. This court reaffirms its holding on plaintiffs' alternative argument that section 7–7–41 is constitutionally defective insofar as it purports to supersede the Utah Due-on-Sale Act by effecting a prospective adoption of federal law.

Accordingly, plaintiffs' motions to alter or amend and for an expedited hearing are denied.